JOHN STOTHERS, CHARLES P. SANDERS, AND JOSEPH
SANDERS, PLAINTIFFS-APPELLANTS, v. ANTHONY
MARTINI, CLERK OF THE CITY OF PASSAIC, DEFEND-
ANT-RESPONDENT.

Argued March 12, 1951—Decided April 2, 1951.

*Mr. Hubert J. Franklin* argued the cause for the appellants (*Messrs. Franklin and Franklin,* attorneys).

*Mr. Oscar Wilensky* argued the cause for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J. The City of Passaic is a municipality having a commission form of government under the provisions of the Walsh Act (*R. S.* 40:72–1 *et seq.*) and the plaintiffs are all citizens, residents and qualified voters of the city. On December 8, 1950, the plaintiff, John Stothers, submitted for filing to the defendant, Anthony Martini, the clerk of the city, duly executed petitions for his nomination for the office of commissioner to be voted for at an election to be held on May 8, 1951. Among those signing the petitions were the plaintiffs, Charles P. Sanders and Joseph Sanders. The defendant refused to accept and file the petitions for the reason that Stothers concededly did not qualify for the office of commissioner as provided for by *R. S.* 40:72–1, as amended by the Laws of 1948, chapter 21, section 2, which requires that:

"Each member [of the commission] shall have been a citizen and resident of the municipality for at least two years immediately preceding his election, or shall have voted in such municipality at the two general elections immediately preceding his election."

The plaintiffs thereupon instituted this proceeding in lieu of prerogative writ in the Law Division of the Superior Court to compel the defendant, who has no interest other than to comply with the statute in the performance of his duties, to accept and file the petitions. The plaintiff Stothers alleged that the statute as quoted above and the defendant's reliance thereon are violative of his constitutional right to seek and hold public office and the other two plaintiffs asserted that their constitutional rights to nominate and elect qualified electors to public office were infringed.

There was no dispute as to the facts and both the plaintiffs and the defendant moved for summary judgment, thereby presenting to the trial court the simple question of the constitutionality of *R. S.* 40:72–1, as amended. From the ensuing judgment in favor of the defendant the plaintiffs appealed to the Appellate Division of the Superior Court and we have certified the appeal on our own motion.

In their briefs the plaintiffs present interesting arguments as to the inherent political power of the people and invoke a variety of constitutional provisions in aid of their contention that the right of suffrage and the right to seek and hold public office are coextensive and immune from legislative interference, but they paint with too broad a brush. The sole issue on this appeal is the constitutionality of *R. S.* 40:72–1, as amended, and in resolving this issue we need only decide whether the Legislature may prescribe reasonable qualifications for elective municipal offices and, if so, whether the requirements of the statute in question are reasonable.

Local municipal offices, including the office of commissioner for which the plaintiff Stothers sought to be nominated, are not provided for by the Constitution and it is therefore naturally silent as to the qualifications for such offices. It is to be remembered that municipalities are mere agencies of the State and that the power of the Legislature over them is broad and well established, *Jersey City v. Martin,* 126 *N. J. L.* 353, 361 (*E. & A.* 1941) ; *Attorney-General v. McGuinness,* 78 *N. J. L.* 346 (*E. & A.* 1910). The latter case involved the question of "whether in our system the right of local self-government is guaranteed to the people of the several political divisions of the state, so that the legislature has no power to provide for the government of those divisions by commissions unless such commission is chosen by the people themselves." (p. 352). In deciding that no such right of local self-government was conferred by the Constitution of 1844 the Court of Errors and Appeals stated:

"But it is significant that the whole of the constitution may be searched in vain for any specific provision guaranteeing to the people the right of local self-government, or prohibiting the legislature from exercising powers of local government through the instrumentality of commissions, however chosen. \* \* \* And if we were thus to write local self-government into the constitution, in what terms should it be defined? \* \* \* And how is local self-government to be exercised ; how are the members of the governing body to be chosen, and what are to be their qualifications?" (*p.* 353).

This statement is equally true with respect to the Constitution of 1947. It is thus only logical to conclude that since the Legislature has the unrestricted power to provide for elective municipal offices that it also has the power to prescribe reasonable qualifications therefor.

On the basis of the maxim *expressio unius est exclusio alterius* it has consistently been held that the Legislature may not add to the qualifications fixed by the Constitution for holders of constitutional offices, *Imbrie v. Marsh*, 3 *N. J.* 578, 585 (*Sup. Ct.* 1950); *Annotation*, 47 *A. L. R.* 481. Conversely, it is the overwhelming weight of authority that the Legislature may prescribe qualifications for elective public office provided there is no constitutional provision on the subject and the exclusions from office are not arbitrary, 3 *McQuillin, Municipal Corporations* (3rd ed. 1949) 12.58, *p.* 232; 42 *Am. Jur., Public Officers*, 38, *p.* 909. Numerous cases from many jurisdictions support this statement from McQuillan:

"State constitutions, municipal charters and state laws usually prescribe what persons are eligible to hold public office or place, and provide, sometimes with precision, and sometimes generally, the qualifications necessary. Qualification is as essential as election to the right to hold public office; for the right of one elected to an office to be inducted is in subordination to the constitution and the laws, and the officer must possess the necessary qualifications before he can fill the office.

"As there is no constitutional or inherent right to be elected or appointed to office or public position, it is competent for the appropriate law making body to prescribe reasonable qualifications. Unless restricted by the constitution the legislature may prescribe the qualifications of municipal officers."

There are apparently no decisions in this State squarely deciding the issue here presented, although on several occasions the courts have recognized the Legislature's power to prescribe qualifications for elective offices in the absence of constitutional provisions. In *Gansz v. Johnson*, 9 *N. J. Super.* 565, 568 (*Law Div.* 1950), is found this language: "As was stated in the case of *In re Callahan*, 200 *N. Y.* 59

(*Ct. of Appeals,* 1910), it is true that the Legisláture may prescribe qualifications for office where there is no constitutional provision on the subject, but it cannot enact arbitrary exclusions from office." In the case of *In re Ray,* 26 *N. J. Misc.* 56, 59, 63 (*Cir. Ct.* 1947), are the statements that "The right to hold public office is a valuable one and its exercise should not be declared prohibited or curtailed except by plain provisions of the law," and that a borough councilman should not be disqualified "unless clearly ineligible under some constitutional or statutory provision." Similarly in *Kobylarz v. Mercer,* 130 *N. J. L.* 44, 47 (*E. & A.* 1943), it was said that disqualification, subject to constitutional limitations, was "essentially a legislative exercise." And in *Manahan v. Watts,* 64 *N. J. L.* 465, 473 (*Sup. Ct.* 1900), the court stated that "the member of the board of chosen freeholders is a creature of the statute, and he must comply with its requirements in order to be vested with the right to the enjoyment of the office." The only dictum to the contrary is in *Bowden v. Bedell,* 68 *N. J. L.* 451, 453 (*Sup. Ct.* 1902), wherein the court volunteered that "it is doubtful whether eligibility to office in this state can be restricted to any qualification other than that required for the right of suffrage, except where such restriction is found in, or its imposition is authorized by, the constitution of this state," but we do not share the doubts there expressed.

The provision in the Constitution relied upon most heavily by the plaintiffs is Article II, paragraph 3, which reads:

"Every citizen of the United States, of the age of twenty-one years, who shall have been a resident of this State one year, and of the county in which he claims his vote five months, next before the election, shall be entitled to vote for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to a vote of the people."

We do not construe this, as the plaintiffs do, to mean that the right to vote and the right to hold office are coextensive and that the electors may vote for persons not qualified to hold office. Elsewhere in the Constitution itself

qualifications are established for the office of Governor (Article V, Section I, paragraphs 2 and 3) and members of the Senate and Assembly (Article IV, Section I, paragraph 2). A person not so qualified is not entitled to hold or be elected to these offices and the electors have no right to vote for him, for it would be absurd to say that there was a right to vote for one who could not serve. The quoted provision of the Constitution was designed to establish the basic qualifications for suffrage and place them beyond legislative curtailment. In *Allison v. Blake,* 57 *N. J. L.* 6 (*Sup. Ct.* 1894), it was held unconstitutional to restrict the right to vote to freeholders. It was also included to guarantee that each elector could cast a vote for each elective office; see *McArdle v. Jersey City,* 66 *N. J. L.* 590 (*E. & A.* 1901) in which the court held unconstitutional legislation providing for the election of four excise commissioners but provided that each voter could only vote for two. This is quite a different thing from that for which the plantiffs contend.

It is not without significance that other statutes prescribing additional qualifications for elective offices have been in effect for years and their constitutionality has gone unquestioned. *R. S.* 18:7–11, for example, requires that a member of the board of education:

"shall be a citizen and resident of the .territory contained in the district, and shall have been such for at least three years immediately preceding his becoming a member of the board. He shall be able to read and write. He shall not be interested directly or indirectly in any contract with or claim against the board."

And *R. S.* 40:41–1 provides:

"No person shall be sheriff of any county unless he shall have been a citizen of this state and an inhabitant of the county for at least three years next preceding his election."

This statute is particularly interesting because the office of sheriff has always been provided for by constitution (*Constitution of 1947, Article VII, Section II, paragraph 2;*

*Constitution of* 1844, *Article VII, Section II, paragraph* 6 ; *Constitution of* 1776, *Article* 13) and in *State v. Anderson,* 1 *N. J. L.* 366 (318) (*Sup. Ct.* 1795), the election of a sheriff who failed to meet the qualifications imposed by the Legislature was held to be voidable.

Since we are of the opinion that the Legislature in this State may constitutionally prescribe reasonable qualifications for elective municipal offices, the question next presented is whether or not *R. S.* 40:72–1 is reasonable. A statute is always presumed valid and constitutional and when a qualification of this sort is imposed it will be upheld unless it is shown to be arbitrary, capricious or unreasonable. It does not appear to us that a requirement of a two-year residence or of having voted at two previous general elections is unreasonable as a prerequisite for direct participation in the government of a city. It is obviously designed to insure that city commissioners have at least a rudimentary understanding of local affairs. Indeed, the Constitution itself by providing residence requirements for key officers in the State Government has enunciated the principle that the persons who are to make and execute the laws of the State should have a substantial period of residence in this State in order to familiarize themselves with its conditions and needs. Similarly, the persons who are to make the municipal ordinances for the government of a city and who are to supervise the execution of those ordinances should have sufficient residence in the city to know its conditions and needs and be aware of any abuses and inefficiencies that may need correction. The qualifications prescribed by the statute in question are wholly proper.

The judgment appealed from is affirmed.

*For affirmance*: Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*: None.