CARLO J. ALONGI, JR., PLAINTIFF-APPELLANT, v. FRANK D. SCHATZMAN, CLERK OF MIDDLESEX COUNTY, WILLIAM REICHENBACH, CLERK OF BOROUGH OF SOUTH RIVER IN THE COUNTY OF MIDDLESEX, AND JOSEPH SHALUHA, DEFENDANTS-RESPONDENTS, AND GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR-RESPONDENT.

Argued December 22, 1970—Decided February 22, 1971.

566

568

*Mr. Russell Fleming, Jr.* argued the cause for plaintiff-appellant (*Messrs. Sailer & Fleming,* attorneys; *Mr. Russell Fleming, Jr.* on the brief).

*Mr. William H. Gazi* argued the cause for defendant-respondent Joseph Shaluha (*Messrs. Foley and Gazi,* attorneys).

*Mr. Richard M. Conley,* Deputy Attorney General, argued the cause for Attorney General as Intervenor-respondent (*Mr. George F. Kugler, Jr.* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney

General, of counsel; *Mr. Richard M. Conley,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

PROCTOR, J. The primary issue in this case is the constitutionality of the requirement in *L.* 1967, *ch.* 44 (*N. J. S. A.* 54:1–35.25 *et seq.*) that a candidate for the elective office of municipal tax assessor be a graduate of a four year course at a college of recognized standing. This requirement is part of a statutory scheme for the certification of both elected and appointed assessors. To obtain an assessor's certificate, a person must have passed an examination given by the Director of the Division of Taxation. This examination is open only to those who have completed a four year course at a college of recognized standing or who have had full-time experience in real estate appraisal work or experience in property tax assessment work on a year-for-year basis. *N. J. S. A.* 54:1–35.25.[1] No candidate for election to a term commencing on or after July 1, 1971, may have his name placed on the ballot unless he has filed with the municipal clerk proof that he is the holder of a valid tax assessor certificate. *N. J. S. A.* 54:1–35.30.

The plaintiff is the incumbent tax assessor of the Borough of South River and was a candidate in the November 3, 1970 general election for a second term of office beginning July 1, 1971. There is no dispute that he meets the statutory qualifications for the position and that the defendant Shaluha does not.

On June 3, 1970, at the primary election, Shaluha was nominated by his party to run against the plaintiff. Earlier, in May of that year, the plaintiff attempted to learn whether Shaluha was qualified for office by asking him whether he

---

[1] *N. J. S. A.* 54:1–35.25 was supplemented on December 29, 1970 by *L.* 1970, *ch.* 330, § 1 (*N. J. S. A.* 54:1–35.25a) to "lift" the college education or the equivalency requirement in substitution thereof until December 31, 1972. This amendment was enacted subsequent to the argument before us and will be discussed, *infra.*

was a college graduate. The trial judge found that Shaluha falsely represented his qualifications as a college graduate, and that finding is not questioned here.

On or about June 9, 1970, defendant Reichenbach, the Borough Clerk, certified Shaluha as a candidate even though he lacked the requisite tax assessor's certificate. This was a flagrant violation of *N. J. S. A.* 54:1–35.30 which forbids a municipal clerk from certifying the name of a candidate for inclusion on the ballot unless the candidate has a valid assessor's certificate.[2] On June 22, 1970, the plaintiff wrote Reichenbach informing him of his statutory duties in connection "with the certification of candidates for election as assessor." There is nothing in the record to indicate that the plaintiff was yet aware that Shaluha lacked the necessary qualifications and Reichenbach's letter of reply to plaintiff disclosed nothing about Shaluha's lack of eligibility. As the trial judge found, that letter was "unresponsive."

The trial court also found that the plaintiff made numerous efforts to pursue the matter of Shaluha's qualifications with the County Board of Taxation and it was undisputed that, in response to plaintiff's complaints, the Board sent a bulletin to Reichenbach informing him of his duties in certifying candidates.

There was an assessor's examination scheduled for September 19, 1970, pursuant to *N. J. S. A.* 54:1–35.25, and plaintiff apparently awaited this event to ascertain whether Shaluha was qualified to run for assessor. On September 29, 1970, in answer to his inquiry, plaintiff received a letter from the State Division of Taxation informing him that Shaluha did not possess a tax assessor certificate. He complained to defendant Schatzman, the County Clerk, seeking

[2]*N. J. S. A.* 54:1–35.30 provides in pertinent part:

"In the case of a candidate for election as municipal tax assessor for a term commencing on or after July 1, 1971 * * * the municipal clerk shall not certify the name of such person for inclusion on the ballot as a candidate unless there shall be filed with the municipal clerk proof that such person is the holder of a valid tax assessor certificate."

to have Shaluha's name removed from the ballot because of his ineligibility. Schatzman replied by a letter dated September 30, 1970 that plaintiff's objection was out of time since it did not comply with *N. J. S. A.* 19:13–10.[3] Accordingly, Schatzman refused to take any action.

Finally, plaintiff requested that the County Tax Board, which had general supervision over municipal assessors, have Shaluha's name struck from the ballot. The Board informed him that it could not comply with his request and suggested that, if he wished to press the matter, he should look to the courts for redress. Shortly thereafter, on October 7, 1970, plaintiff filed the present action in the Law Division.

At the trial conducted the following day, Judge Furman held that the defendant Shaluha was improperly on the ballot since he did not have the tax assessor certificate mandated by *N. J. S. A.* 54:1–35.30. He also found that the election law provisions cited by the defendants (*N. J. S. A.* 19:13–10; *N. J. S. A.* 19:13–12; *N. J. S. A.* 19:29–3) were not applicable, but held that the suit was a proceeding in lieu of prerogative writ and governed by the 45-day period applicable to such a suit (*R.* 4:69–6(a)). He further held that, because of plaintiff's efforts to learn through official channels whether Shaluha was eligible and because of Shaluha's misrepresentation that he was a college graduate, the 45-day period was tolled and did not commence to run until plaintiff learned of Shaluha's ineligibility. The trial judge concluded that plaintiff's suit was timely and that Shaluha's name should not appear on the ballot in the general election to be held on November 3, 1970. He did not

[3] *N. J. S. A.* 19:13–10 provides:

"Every petition of nomination in apparent conformity with the provisions of this title shall be deemed to be valid, unless objection thereto be duly made in writing and filed with the officer with whom the original petition was filed within two days after the last day for filing of petitions has expired. If such is made, notice thereof signed by such officer shall forthwith be mailed to the candidate who may be affected thereby, addressed to him at his place of residence as given in the petition of nomination."

rule on the constitutionality of the eligibility requirements. The judgment was entered on October 20, 1970.

Only defendant Shaluha appealed to the Appellate Division. In an unreported opinion that court reversed, one judge dissenting, on the ground that plaintiff's action was not timely. It ordered that Shaluha's name be restored to the ballot, but held that its reversal was without prejudice to plaintiff's right to further challenge Shaluha's qualifications in the event Shaluha was elected.

On plaintiff's motion to this Court, the matter was heard on October 27, 1970 in an accelerated procedure. The main issue argued before us was the constitutionality of *N. J. S. A.* 54:1–35.25. We reserved decision. Subsequently, we were notified that Shaluha was the successful candidate in the election held on November 3. On November 9, we directed the parties to file supplementary briefs on the issue of "whether a general collegiate degree is a permissible requirement for elective office." Briefs were filed by the parties and by the Attorney General as an intervenor.

On the issue of whether plaintiff's suit was timely, we are in agreement with Judge Furman that under the circumstances of this case, the action was brought in good time. The election statutes upon which defendant relies do not deal with the problem presented here. *N. J. S. A.* 19:13–10 imposes a stringent two-day limitation period within which to attack petitions for nomination in apparent conformity with the provisions of Title 19 dealing with election laws. There is no attack on a petition for nomination in the present case. Nor do we believe that *N. J. S. A.* 19:13–12 is applicable. That statute deals only with invasions of a candidate's rights. Although the plaintiff here is a candidate, he is also a citizen and taxpayer, and he complains in this latter capacity. The statute does not apply to an action instituted by a resident and voter to vindicate the public right by requiring public officials to comply with the law. *McManus v. Allan,* 2 *N. J. Super.* 557, 561–562 (Law Div. 1949). Finally, *N. J. S. A.* 19:29–3, setting a

ten-day limitation for contesting a nomination or election is inapplicable. There is no challenge here to Shaluha's nomination, and at the time plaintiff's complaint was filed, no election had been held. The limitation periods called for by all three statutes apply only to the situations specifically described and we will not extend them beyond the clear import of their language. It is also noteworthy that the eligibility requirements for an assessor are not even found under the election laws, and there is, of course, no special limitation period for actions contesting certifications of assessors by the municipal clerk. We conclude that Judge Furman correctly applied the general limitation for actions in lieu of prerogative writs.

We are also of the opinion that Judge Furman was correct in enlarging the rule's 45-day limitation period. The rule specifically permits the enlargement of the time limitation "where it is manifest that the interest of justice so requires." *R.* 4:69–6(c). Plaintiff did not receive definite word of Shaluha's ineligibility until September 29 and in view of Shaluha's misrepresentation of fact and plaintiff's persistent efforts to ascertain whether Shaluha was eligible, we think that there were ample reasons for enlarging the time limitation. See *Kent v. Borough of Mendham,* 111 *N. J. Super.* 67, 76 (App. Div. 1970). Accordingly, the present suit, filed on October 7, was not out of time.

Since we conclude that the action was timely, we next consider the constitutionality of the requirement for a college education. *N. J. S. A.* 54:1–35.25, in effect at the time of the 1970 election, provided that in order to be admitted to the assessor's examination,

An applicant for examination shall, not less than 30 days before an examination, present to the director written application on forms provided by the division together with satisfactory proof that the applicant is not less than 21 years of age, is a citizen of the United States, is of good health and free from disabling physical and mental defects, is of good moral character, has obtained a certificate or diploma issued after at least 4 years of study in an approved secondary school or has received an academic education considered and

accepted by the Commissioner of Education as fully equivalent, *and has graduated from a 4-year course at a college of recognized standing. An applicant who does not meet the college education requirement may substitute full-time experience in real estate appraisal work or experience in property tax assessment work on a year-for-year basis* (emphasis added)

As pointed out earlier, successful completion of the examination—admission to which requires a college degree or its equivalent—is a prerequisite to the obtaining of a tax assessor certificate. Shaluha concedes that he does not hold such a certificate. He also admits that he satisfies neither the requirement of a college degree nor the experience in lieu of that degree. But he contends that the requirement an assessor be a college graduate is arbitrary and bears no reasonable relationship to the duties of the office.

▮ It is questionable whether we should determine the constitutionality of the college education requirement. Shaluha would not be qualified in any event since he did not even attempt to take the examination. His proper recourse was to demand admission to the examination and, when admission was refused, to challenge the constitutionality of the college education requirement in court. He knew from the start that he did not meet that requirement and he had ample opportunity to test its constitutionality. Instead, he stood for office knowing he lacked the statutorily required qualifications.

Despite what we have said above, we will consider the constitutionality of the college education requirement because of its importance to the public and because it has been briefed by all parties.

▮ Shaluha concedes in his brief that since the office of assessor was created by the Legislature rather than by the Constitution, the Legislature may enact such requirements for the office as are reasonable. See *Stothers v. Martini,* 6 *N. J.* 560 (1951). In that case this Court upheld as reasonable a statute requiring a candidate for the office of municipal commissioner to be a resident of the municipality for two

years prior to the election. The Court said that the statute was designed to insure that commissioners have at least a rudimentary understanding of municipal affairs. *Id.* at 567. Of course, in deciding whether a qualification for elective office is reasonable, we must take into account that the power to prescribe qualifications is limited by the constitutional right to vote—a right which could be meaningless if the list of candidates was restricted to persons possessing qualifications bearing no rational relationship to the office. However, the right to hold office is not coextensive with the right to vote. *Id.* at 565. The Legislature may prescribe qualifications which reasonably relate to the needs of officeholding as such as did the qualification in *Stothers,* or to prescribe qualifications which reasonably relate to the specialized demands of an office. As Chief Justice Weintraub said in *Gangemi v. Rosengard,* 44 *N. J.* 166 (1965) in dealing with the problems of qualifications for elective office:

A prescribed qualification for office must relate to the needs of officeholding as such or the special needs of the particular office involved, with the voters free to judge the personal or individual fitness of the candidates who have those basic qualifications. *Id.* at 171.

\* \* \* [Q]ualifications may arise out of the specialized demands of a particular office. It would be reasonable to require a candidate to be a lawyer, physician, or engineer if the duties of the elective office called for such professional skill. *Id.* at 174.

There is no dispute that the office of municipal tax assessor involves specialized demands. The task of assessing property has become increasingly complicated. Moreover, proper assessment techniques are extremely important since local property taxes are the key source of revenue in municipal and county finance. It is crucial that persons competent to meet the demands of the office serve as assessors and it is to this end that the attacked legislation was obviously directed. The sole inquiry is whether the requirement of a college education is reasonably aimed towards the goal of increasing the competence of assessors.

In 1964 the Committee to Study the Training of Tax Assessors in New Jersey issued a report which recommended higher educational qualifications for assessors. It said, *inter alia*:

> The assessment task is becoming increasingly technical. Assessors can no longer rely only upon a subjective knowledge of property values gained by years of exposure; they must be able to study trends, analyze data in books and reports, and be capable of applying the results to their taxing districts.
>
> In 1957, 71 per cent of the assessors in the state had finished high school and 22 per cent had completed college. By 1963, the figures had risen to 100 per cent for high school graduates, while 36 per cent had attended college for some period. The trend definitely is toward a higher level of educational preparation. This trend should be encouraged and promoted, while at the same time leaving an opportunity for the person with lesser education, but some experience equivalent, to enter the field. *Report* at 13.[4]

The Committee recognized that it was "of crucial importance that tax assessments be made by well-qualified persons" and that a higher level of education would improve the quality of assessors. At that time the only statutory qualifications were minimal—citizenship, residence and voting age—and as the Committee recognized, the competence of the assessors did not measure up to the task. Accordingly, the Committee specifically recommended that graduation from a four year college or its experience equivalent be a prerequisite to examination and certification of tax assessors. *Report* at 13–14, Table 3.

Recognizing the needs stressed by the Committee, the Legislature in 1967 passed the challenged legislation, which

[4] The Committee also recommended that an assessor be required to have "a thorough knowledge of property tax administration," "a thorough knowledge of real property appraising," "a thorough knowledge of personal property evaluation," "a wide knowledge of state and local government," "a wide knowledge of office methods, machines, and internal organization," "some knowledge of building construction and mechanical installation," "some knowledge of the basic principles of land surveying," "some ability to use simple maps," "some knowledge of real estate law," and "some ability in public relations." *Report* at 13–17.

followed the recommendations of the *Report*. The purpose is stated in the preamble:

WHEREAS, the local property tax is the major source of revenue in State-local finance in New Jersey; and

WHEREAS, It is certain that the property tax will remain vitally important to New Jersey in the foreseeable future; and

WHEREAS, It is essential that the burden of the property tax be distributed equitably among the taxpayers in accordance with the law; and

WHEREAS, It is recognized that no other single factor is so important in insuring the competent and equitable administration of the property tax as that the tax assessment be made by a well-qualified person * * *.

We note that the Civil Service requirements for education and experience are far more stringent for top level assistants in the assessor's office than they are for the assessor himself. *Report* at 12, Table 2. These requirements indicate that the Civil Service Commission, which is vitally concerned with the question of job qualifications and possesses expertise in this field, has found it useful to require a college education for top echelon employees in the assessor's office. If a college education serves a valid purpose as applied to these persons, it should *a fortiori* serve a valid purpose as applied to the head of the office.

We are not here confronted with a statute setting qualifications for an elective office which primarily involves policy making in furtherance of the needs of a constituency. An assessor is solely concerned with making certain that the properties within his municipality are correctly assessed. His duties are in principle not unlike those of a municipal attorney or engineer. Surely no one would contend that educational requirements for those offices are unreasonable even were they elective. See *Gangemi v. Rosengard, supra* at 174. Although the requirement of a general college education is not quite the same as the more specialized educational requirements for lawyers and engineers, we think the Legislature could properly find that the broad exposure to learning given by a general college education is reasonably

related to a proper fulfillment of an assessor's duties. It could reasonably find that, in today's complex society, persons having a college education are generally better equipped to grasp concepts, solve problems and express themselves than those lacking such an education, and that an assessor examination alone would not provide sufficient indication of a person's ability to serve as assessor. At the minimum a college education demonstrates an ability to pursue a course of study for four years and a level of mental competence sufficient to successfully fulfill the requirements for a degree. Moreover, it is likely that some of the materials encountered over a period of four years of college will bear directly or indirectly upon a person's ability to administer the duties of an assessor. After all, with all of the ramifications of the office, fulfillment of an assessor's duties requires more than a talent for getting elected.

We note that a college degree is not the statutory *sine qua non* of a candidate's eligibility to take the examination. He may substitute experience in real estate appraisal work or experience in property tax assessment work on a year-to-year basis. Of course, the defendant here was not qualified on this basis either.

Subsequent to the argument before us, on December 29, 1970, *L.* 1970, *ch.* 330, § 1 (*N. J. S. A.* 54:1–35.25a) was signed into law by the Governor. That law supplements the statute challenged here by holding in abeyance the college education requirement or its equivalent until December 31, 1972. Applicants must still pass the assessor's examination. Shaluha contends that this law is retroactive. Ordinarily, legislation is presumed to operate prospectively only, and we will not give a statute retroactive operation unless the Legislature has unequivocally shown such an intent. *Nickell v. Gall,* 49 *N. J.* 186, 188 (1967); *Kopczynski v. County of Camden,* 2 *N. J.* 419, 424 (1949). There is no indication that the Legislature intended the statute to have retroactive effect and we hold that it does not. There is no merit to Shaluha's contention that the Department of Taxation con-

siders the new legislation to be retroactive. Of course, the Department could not declare a statute to be retroactive in the absence of a clear legislative intent, but, in any event, we do not believe that it has done so. It has merely ruled that applicants previously rejected solely because of their lack of a college education or its equivalent may now be admitted to the assessor's examination without filing a new application. Obviously, neither the Legislature nor the Division meant to reopen past elections, and that Shaluha was illegally on the ballot should place him in no better position than one who, realizing he lacked the statutory qualifications, made no effort to stand for office.

The remaining question is what effect the results of the election, *viz.*, that the ineligible candidate received the majority of the votes, should have upon our determination of this appeal. Generally, votes cast for an ineligible person, although ineffective to elect that person to office, are not treated as void, but are counted in determining the results of the election as regards other candidates. See *In re Keogh-Dwyer*, 106 *N. J. Super.* 567, 574 (Law Div. 1969), aff'd 54 *N. J.* 523 (1969) ; *Haack v. Ranieri*, 83 *N. J. Super.* 526, 532–534 (Law Div. 1964). See generally, *Annotation*, "Elections — Dead or Disqualified Candidate," 133 *A. L. R.* 319. However, all of these cases involve suits instituted after elections. In the present case the suit was brought not to challenge an elected person's right to serve in office, but rather to have an ineligible candidate's name removed from the ballot. The trial court held that Shaluha's name should be removed. On Shaluha's appeal, the Appellate Division restored his name to the ballot. Since we are reversing the decision of the Appellate Division and affirming the decision of the trial court, the critical date is the filing of plaintiff's complaint. That complaint makes it plain that the relief sought was the removal of Shaluha's name from the ballot. Of course, it is now too late to remove that name, but we think the plaintiff should be in the same position in which he would have been had we decided the case prior to the

election and ordered Shaluha's name removed. There is no suggestion that anyone in the municipality other than the plaintiff held an assessor's certificate and was therefore eligible to stand for the election to the office if Shaluha's name had been removed from the ballot prior to election.

The judgment of the Appellate Division is reversed and the judgment of the trial court is reinstated. Plaintiff is entitled to assume office as borough assessor as of July 1, 1971.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.