186 N.J. Super. 281 (1982)
452 A.2d 487
THOMAS HIGHTON AND ROBERT MENDENDEZ, PLAINTIFFS,
v.
WILLIAM MUSTO, JOSEPH BRADY, SUPERINTENDENT OF ELECTIONS OF THE COUNTY OF HUDSON, AND LINDA CALABRESE, DE FACTO ACTING CLERK OF THE CITY OF UNION CITY, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided June 23, 1982.
*282 Eric J. Bal for plaintiffs.
*283 Thomas A. DeClemente for defendant William V. Musto (DeClemente & Klitzner, attorneys).
Kenneth M. Olex for plaintiff State of New Jersey (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
George J. Kaplan for defendant Linda Calabrese, de facto Acting Clerk of the City of Union City.
O'BRIEN, A.J.S.C.
This is a suit by a defeated candidate in a municipal election. The coplaintiff is a registered voter in that municipality. Defendant William Musto was one of the successful candidates.
On March 26, 1982 Musto was convicted of a series of federal offenses in the United States District Court. On May 10, 1982 he was sentenced upon those convictions. This court has concluded, in a decision rendered on June 16, 1982, that Musto was disqualified from holding any office or position of honor, trust or profit by virtue of those convictions, pursuant to N.J.S.A. 2C:51-2(c). It further concluded that by reason of this disqualification he can not assume the office of commissioner and a vacancy resulted.
This case presents the question as to the appropriate method for filling that vacancy.
The City of Union City is governed by the commission form of government as authorized by N.J.S.A. 40:70-1 et seq. On May 11, 1982 a regular municipal election was held to select five commissioners for four-year terms commencing July 1, 1982, pursuant to N.J.S.A. 40:75-2, as amended by L. 1981, c. 379. Musto was one of the five highest vote getters. Plaintiff Highton was the sixth highest vote getter.
Highton contends that since Musto is disqualified from holding the office of commissioner, and was so disqualified prior to the date of the election, Highton should be considered as among the top five highest vote getters. In other words, Highton contends that the election of Musto should be considered a *284 nullity and the votes cast for him be treated as void or thrown away, which would result in Highton being one of the five highest vote getters. N.J.S.A. 40:75-23, repealed and replaced by L. 1981, c. 379, § 13.
It is the general rule that votes cast for a deceased, disqualified or ineligible person are not to be treated as void or thrown away, but are to be counted in determining the results of the election as regards the other candidates. 133 A.L.R. 319, 320. This rule has been followed in New Jersey, Chandler v. Wortman, 6 N.J.L.J. 301 (1883); In re Keogh-Dwyer, 106 N.J. Super. 567, 574 (Law Div. 1969), aff'd 54 N.J. 523 (1969), in which the annotation 133 A.L.R. 319 was cited with approval.
Plaintiff refers to N.J.S.A. 19:3-4, which provides:
At every election the person or persons, to the number to be elected therein, who shall by law be qualified for the office or offices to be filled at such election, and for whom the greatest number of votes shall have been given therein for such office or offices, shall be deemed and taken to be elected to such office or offices.
He argues that he should be considered among the top five "qualified" vote getters. He agrees that this section applies "only in so far as the provisions ... are not inconsistent" with other statutory provisions relating to elections in specific municipalities. See N.J.S.A. 19:1-2.
N.J.S.A. 40:75-23 provided:
The number of candidates equal to the number of places to be filled, receiving the highest number of votes, shall be elected as commissioners.
This section was repealed by L. 1981, c. 379. Section 13 thereof reads as follows:
At the regular municipal election in any municipality which has adopted this act, the candidates receiving the greatest number of votes cast shall be elected to the respective offices. The term of office of any officer elected pursuant to this act shall begin on July 1 next following election.
Union City has not adopted the run-off provisions of §§ 14 and 15 by the referendum provided in § 17.
It is noted that the phrase "who shall by law be qualified" has been omitted from N.J.S.A. 40:75-23, as well as from L. 1981, c. 379, § 13. While it may, of course, be presumed that those elected shall be qualified, any argument based upon the specific *285 language of N.J.S.A. 19:3-4 is weakened by its inconsistency with the specific statutes referring to elections in Walsh Act communities.
Highton argues that Musto's disqualification existed on the day of the election and prior thereto. This court has so ruled in State v. Musto, consolidated with Musto v. Orechio, 187 N.J. Super. 264. Highton further argues that in In re Keogh-Dwyer, supra, Judge Fritz observed that no effort was made to remove the deceased candidate's name from the ballot prior to the election. He points out that this very suit was originally instituted on May points out that this very suit was originally instituted on May 10, 1982, seeking to remove Musto's name from the ballot in view of his having been sentenced on his federal convictions that day. This court denied that application as coming too late.
While application to remove Musto's name from the ballot might have been made on March 26, 1982, the date of his convictions, Highton contends that he waited until Musto's motion for a new trial was decided. This occurred on May 6, 1982, yet the application was not filed until May 10, 1982, the date of sentencing.
During a brief hearing it was noted that although it was physically possible to remove Musto's name from the ballot, it would involve a great deal of difficulty. Furthermore, absentee ballots and sample ballots had already been sent out containing Musto's name. The court based its conclusion upon the reasoning of In re Keogh-Dwyer, supra, that after a certain time "the ballot is immutable. Deletions, additions and substitutions are not possible." Further it recognized Musto's challenge to the constitutionality of N.J.S.A. 2C:51-2(a) and (c). The court reasoned that removal of a candidate's name at this eleventh hour, with it remaining on absentee and sample ballots, would create confusion. Furthermore, if the candidate's challenge to the statute upon which his disqualification was premised was successful, the damage to the election would be irremediable. On the contrary, if unsuccessful, as in fact it was, we would have *286 the benefit of the vote of the electorate to which may be applied the appropriate principles of law in determining the proper method of filling the vacancy thereby created.
Plaintiff Highton relies upon Alongi v. Schatzman, 57 N.J. 564 (1971). In that case the court dealt with a candidate who was disqualified because he lacked the education which was a statutory qualification for the position of municipal tax assessor. Plaintiff possessed those qualifications, his opponent Shaluha did not. Suit was brought to remove Shaluha from the ballot because of his lack of qualification. The Law Division ruled in plaintiff's favor and directed that Shalula's name be removed. This decision was reversed by the Appellate Division with one judge dissenting. The election was held and Shaluha was elected. Then the Supreme Court reversed the Appellate Division and reinstated the Law Division's decision removing Shaluha from the ballot and said as follows:
The remaining question is what effect the results of the election, viz, that the ineligible candidate received the majority of the votes, should have upon our determination of this appeal. Generally, votes east for an ineligible person, although ineffective to elect that person to office, are not treated as void, but are counted in determining the results of the election as regards other candidates. See In re Keogh-Dwyer, 106 N.J. Super. 567, 574 (Law Div. 1969), aff'd 54 N.J. 523 (1969); Haack v. Ranieri, 83 N.J. Super. 526, 532-534 (Law Div. 1964). See generally Annotation "Elections-Dead or Disqualified Candidate," 133 A.L.R. 319. However, all of these cases involve suits instituted after elections. In the present case the suit was brought not to challenge an elected person's right to serve in office, but rather to have an ineligible candidate's name removed from the ballot. The trial court held that Shaluha's name should be removed. On Shaluha's appeal, the Appellate Division restored his name to the ballot. Since we are reversing the decision of the Appellate Division and affirming the decision of the trial court, the critical date is the filing of plaintiff's complaint. That complaint makes it plain that the relief sought was the removal of Shaluha's name from the ballot. Of course, it is now too late to remove that name, but we think the plaintiff should be in the same position in which he would have been had we decided the case prior to the election and order Shaluha's name removed. There is no suggestion that anyone in the municipality other than the plaintiff held an assessor's certificate and was therefore eligible to stand for the election to the office if Shaluha's name had been removed from the ballot prior to election. [57 N.J. at 579-580]
While there is a similarity between that case and this case in that Highton did initially institute this suit for the purpose of *287 having Musto's name removed from the ballot, the similarity, however, ends there. This court denied the application to remove Musto's name for the reasons above stated. There was no appeal from that decision. We are, therefore, reviewing the situation after the election has been held and, as noted in Alongi, the general rule should be applied. Additionally, in the Alongi case the office required someone possessed of a specific qualification and there was no showing that there was any other person possessed of that qualification. That, of course, is not the circumstance in this case. Thus, the Alongi case is clearly distinguishable from the instant case and, in fact, is clear support for the applicability of the general rule.
The annotation in 133 A.L.R. 319 comprehensively covers the question presented. The court is satisfied that the general rule as enunciated in that annotation applies in the State of New Jersey. Plaintiff here is arguing for application of the so-called "English rule." In a somewhat similar case in Missouri, the Supreme Court of that state dealt with this question. Sheridan v. City of St. Louis, 183 Mo. 25, 81 S.W. 1082 (1904). In setting the stage for the argument, the court pointed out:
It is argued, however, that as Vogel's disqualification existed at the date of the election, he was then ineligible, and hence the votes cast for him were thrown away, and, as the plaintiff received the highest number of votes that were cast for any qualified candidate, he was entitled to the office.
This is the same argument made by plaintiff here. The court recognized the existence of the rule in the English courts holding that "votes cast for an ineligible candidate are thrown away, and that, if a majority of the votes are cast for an ineligible candidate, the eligible candidate who receives the next highest number of votes is entitled to be declared elected." That rule apparently also obtained in Indiana.
However, the court applied the general rule, "that a majority or a plurality of votes for an ineligible candidate at a popular election, while conferring upon him no right to the office, is, in the absence of any statute declaring such votes void, so far effectual as to prevent the election of a candidate who received *288 a less number of votes." This same general rule has been applied in New Jersey by the Camden Circuit Court in Chandler v. Wortman, supra (although in that case it was ultimately determined that Wortman was in fact eligible). It was also applied in In re Keogh-Dwyer, supra, and recognized as the general rule in Alongi v. Schatzman, supra.
The Missouri court persuasively explains the reason why the general rule is preferable to the English rule, i.e., "Any doctrine which opens the way for minority rule in any case is anti-Republican and anti-American." Citing McCrary, Election (4 ed.), § 330; Mecham, Public Offices and Officers, § 206. Citing from an earlier Missouri case the court said:
To declare a candidate for an elective office elected who has received but a few votes on the ground that his competitor, who received perhaps twice as many, was disqualified, would not accomplish the will of the electors.
The court concluded:
Notwithstanding some differences of opinion, arising partly from following English decisions which are neither satisfactory in themselves nor adapted to our circumstances, the great weight of American authority supports the rule that, where an ineligible person receives the highest number of votes, the votes cast for such person so far avail as to prevent the election of the qualified candidate who has received the next highest number of votes, unless there is some statutory provision declaring the votes cast for the ineligible person void.
It is observed by plaintiff that the trial and conviction of Musto received widespread publicity and the voters had knowledge that he was disqualified. Perhaps the voters did have knowledge of Musto's conviction and sentencing. However, the effect that would have on his candidacy may well not have been known, or at least misunderstood by the voters. Although this court has ruled that N.J.S.A. 2C:51-2(c) is constitutional and self-executing, that declaration did not occur until June 16, 1982. Thus, while the self-execution of the statute means that Musto was indeed disqualified, at least on the day prior to the election it might even be argued that he became disqualified when the jury returned the guilty verdicts on March 26, 1982. See Local 1804 Longshoremen's Ass'n v. Waterfront Comm'n, 171 N.J. Super. 508, 511 (App.Div. 1979), aff'd 85 N.J. 606 (1981), it is *289 doubtful that the voters had complete knowledge of or fully accepted the application of the statute to Musto.
In any event, even if the assumption is made that the voters had full knowledge of Musto's disqualification, the rule remains the same. In § III of the Annotation, 133 A.L.R. 340, the author summarizes the conflicting views:
The two conflicting views on the present question have usually been stated to be to this effect: according to the `English Rule', the voters' knowledge is material, and votes cast for a person known to be deceased or disqualified are to be treated as void and thrown away, and are not to be counted in determining the result of the election as regards the other candidates. According to the `American Rule' the voters' knowledge is not material, and votes cast for a deceased or disqualified person are not to be treated as void or thrown away, but are to be counted, although the voters knew of the death or disqualification. [at 340]
This court is satisfied that in either event the majority rule applies in the State of New Jersey and that the votes cast for Musto are to be counted in determining the outcome of the election and not thrown away. In doing so, it is evident that Highton was not elected.
It is not the intendment of the law to disenfranchise voters by disregarding votes cast by them. There is no indication that the people who voted for Musto would have voted for Highton if Musto's name did not appear on the ballot. By way of example, the court received a letter to the contrary, i.e., "If I hadn't been able to pull the lever for Bill Musto on May 11, I know for certain that I wouldn't have pulled the lever for Mr. Highton." This letter is, of course, not evidential and has not been considered by the court as such. It only illustrates the point which would be the same without the letter.
There were 15 candidates for the five offices. If Musto's name had been removed from the ballot, someone other than Highton might have been among the top five and thereby elected commissioner. It is evident that the will of the electorate was to elect Musto and not to elect Highton. Thus, the court concludes that Highton does not become one of the five successful candidates by reason of the disqualification and ineligibility *290 of Musto. Rather, that circumstance has created a vacancy.
The next question presented is the appropriate manner of filling that vacancy. The Walsh Act, which applies in the City of Union City, contains provisions for the filling of vacancies in the office of commissioner. N.J.S.A. 40:72-15, 15.1, 15.2 and 15.3. These sections have been repealed. N.J.S.A. 40:72-15.1 through 15.3 were repealed by L. 1975, c. 213, § 35. This act created the "Municipal Governing Body Vacancy Law," N.J.S.A. 40:45B-1 et seq. The latter act as well as N.J.S.A. 40:72-15 were repealed by the L. 1979, c. 83, which created the "Municipal Vacancy Law," N.J.S.A. 40A:16-1 et seq. and is applicable to Walsh Act communities such as Union City.
There are a wide variety of sections in the Municipal Vacancy Law. N.J.S.A. 40A:16-3, in pertinent part, provides:
The office of a mayor or a member of the governing body of a municipality shall be deemed vacant
(a) Upon its being so declared by virtue of a judicial determination;
........
(h) Upon a determination that the office comes within the purview of R.S. 19:3-25.
N.J.S.A. 40A:16-16 provides:
Whenever the office of mayor or of member of the governing body shall be declared or deemed vacant pursuant to R.S. 19:3-25, the municipal clerk shall forthwith fix the date for a special election to fill that office for its term or unexpired term, as the case may be, to be held not less than 45 days nor more than 50 days from the date upon which the office was so declared or deemed to be vacant.
N.J.S.A. 19:3-25, referred to therein, in pertinent part provides:
When a person shall remove or be removed from office because his nomination or election thereto has been declared null and void, such office shall be deemed to be vacant.
N.J.S.A. 40A:16-17 provides:
If at any time after an election for the office of mayor or for a member of the governing body and before the time fixed for the commencement of the term of the office, it shall be determined that the person elected to that office shall no longer have the qualifications required for the office, the municipal clerk shall forthwith fix the date for a special election to fill the office for its term or *291 unexpired term, as the case may be, to be held not less than 45 days nor more than 50 days from the date of such determination.
The guiding principles of the Municipal Vacancy Law are summarized in the committee statements of both the Senate and Assembly committees as follows:
1. Vacancies are to be filled as quickly as possible;
2. Vacancies are to be filled at a regular municipal election or general election where possible and practical;
3. Special elections are to be avoided unless specifically appropriate to the circumstances;
4. Special elections where the whole electorate votes, but only the candidates of one party run, are to be avoided; and
5. Appointments to fill vacancies should be conducted, except in special emergency circumstances, in the local contex, should be expeditiously made, and should not be used to thwart minority representation.
From this litany emerges an intention of the Legislature to fill vacancies as quickly as possible, at regular municipal or general elections, and to avoid the cost of special elections unless specifically appropriate to the circumstances. The next municipal election in Union City is four years from now, so the circumstances seem to dictate the use of a special election.
No statute can be drafted to precisely meet all of the circumstances presented by a particular case. The closest section to the circumstances presented by this case is N.J.S.A. 40A:16-17 quoted above. The declaration by the court that N.J.S.A. 2C:51-2(c) was constitutional occurred between the date of the election and before the time fixed for the commencement of the term, i.e., between May 11 and July 1, 1982  that is, on June 16, 1982. It might be argued, however, that in its determination the court concluded that N.J.S.A. 2C:52-2(c) was self-executing and Musto was disqualified prior to the date of the election, at least on the day of his sentencing, May 10, 1982. Therefore, perhaps his disqualification would lie outside the time period established by N.J.S.A. 40A:16-17. However, in light of the court's specific denial of the application to remove Musto's name from the ballot, which was not appealed, followed by the subsequent declaratory judgment, it would appear that the determination *292 of disqualification was made within the time period set forth in N.J.S.A. 40A:16-17.
Even if this were not so, it would appear that the provisions of N.J.S.A. 40A:16-16 would apply, since the court has concluded that Musto's election to the office of commissioner was "null and void" as provided in N.J.S.A. 19:3-25. It is argued by the Attorney General that N.J.S.A. 19:3-25 only applies to someone who is in office, since if you're not in office you cannot be "removed from office." In any event, whichever of these two statutes is applicable, the result is the same, namely that the vacancy is to be filled at a special election to be held within the appropriate time period.
An analysis of the Municipal Vacancy Law evidences a clear legislative intent that vacancies are to be filled by election. Because of the cost, it is preferable that they be filled at regular municipal elections or general elections. When specifically appropriate to the circumstances, however, a special election should be held. It seems to this court that this is the most equitable way to resolve this controversy. With one vacancy to be filled on the commission, the voters will be given the opportunity to select the person of their choice to fill that office. Highton is, of course, free to run for that seat, and if indeed he is the choice of the electorate, he will be elected. Musto can not be a candidate because of his disqualification. The suggestion by Highton that his support has eroded is really irrelevant. He has the opportunity to run for this office  a clear opportunity.
It is, therefore, the conclusion of this court that the defendant municipal clerk fix the date for a special election to fill the office of commissioner, which election is to be held not less than 45 nor more than 50 days from June 16, 1982, the date upon which the court made its determination concerning Musto's qualifications or declared his election to office null and void. The election shall proceed in accordance with N.J.S.A. 40A:16-18, 19 and 21.
*293 The court recognizes that petitions for nominations of successors under N.J.S.A. 40A:16-19(b) "shall be filed with the municipal clerk no later than 15 days ... from the happening of the events set forth in N.J.S. . . 40A:16-16 and 40A:16-17." Since this decision is made on June 23, 1982 and the 15 days began to run from "the happening of the event," i.e., the declaration of vacancy under N.J.S.A. 40A:16-16 or the determination that Musto "no longer had the qualifications required for office" under N.J.S.A. 40A:16-17, 7 of the 15 days for filing of the petition would appear to have run. All of the parties agreed that the appropriate date under the statute is June 16 rather than June 23, 1982. While the court has reservations about that conclusion because of the loss of days for filing of successors' petitions, it has acceded to this date by the parties' consent. However, application to file a petition beyond that time by someone not a party to this case will be entertained by the court.
The next question presented is whether the vacancy that exists should be filled between July 1, 1982 and the date of certification of the winner of the special election. Obviously, there is no incumbent to hold over until his "successor shall have been elected and duly qualified," N.J.S.A. 40:75-2, particularly in light of the fact that the incumbent is Musto who has been declared to have forfeited his incumbent office under N.J.S.A. 2C:51-2(a).
The Attorney General argues that the vacancy should not be filled prior to the special election. He contends that the provisions of N.J.S.A. 40A:16-4(b) apply only to an incumbent. This position is fortified, he says, by the amendment to N.J.S.A. 40A:16-13, which incorporates N.J.S.A. 40A:16-4(b), as well as (a), and requires that it be within the time period provided in N.J.S.A. 40A:16-12. The latter section refers to "the incumbent whose office had become vacant." If the provisions of N.J.S.A. 40A:16-4(b) applied to the circumstances presented by this case, one would have to interpret the words "its unexpired term" to apply to the new four-year term commencing July 1, 1982. *294 More properly, the circumstances of this case are consistent with the provisions of N.J.S.A. 40A:16-17 in that the determination occurred after election, but before commencement of the term.
Since the provisions of N.J.S.A. 40A:16-4 do not appear to apply to the circumstances at hand, the last sentence thereof, i.e., "The governing body may fill the vacancy temporarily by appointment as hereinafter provided," likewise does not apply. This appears consistent with the summaries of the various sections of N.J.S.A. 40A:16 contained in the Senate and Assembly committee statements. With respect to N.J.S.A. 40A:16-15, 16 and 17, the committee said:
These sections provide for special elections when persons elected to office die or are disqualified prior to the commencement of the term, or the office becomes vacant pursuant to R.S. 19:3-25. The tendency of the courts has been to treat factors interposing prior to an elected officer taking office as resulting in a vacancy to be filled pursuant to the current `Municipal Governing Body Vacancy Law'; that is, to be filled by appointment temporarily until the next regular municipal or general election, whichever occurs first. Also, the appointment is to be of the same party as the incumbent. The principle followed in these sections appears to be to have a new election as soon as possible to allow the voters to choose again, with no temporary appointment intervening....
Of course, these committee statements attached to bills are not binding on the court. However, they appear to reflect the legislative intent as revealed by an analysis of the Municipal Vacancy Law. The statute is not totally clear on this point, but it appears that the analysis by the Attorney General, coupled with the statement from the committees that considered the legislation, reflect a legislative intent not to fill the vacancy during the time period intervening between the commencement of the new term and the special election. This appears to make eminently good sense for a variety of reasons. One of them was touched upon by plaintiff's counsel, i.e., that the person who would be selected to fill that vacancy, if a candidate, would obviously have an edge in the election as a sitting commissioner. Further, it would appear incongruous for a person to participate in government and perhaps be removed at the end of as short a period as 50 days.
*295 This brings us to the question of the selection of a mayor. N.J.S.A. 40:72-10 provides:
At the first meeting after their election the commissioners shall choose one of their number to preside at all meetings of the board. He shall be designated `mayor' but shall have no power to veto any measure.
First of all, the language of the statute appears to be mandatory. Secondly, it is recognized that the four elected commissioners would be sufficient in number to select the mayor, regardless of the choice of the fifth commissioner to be elected. However, it would seem appropriate that the fifth commissioner should have an opportunity to vote for this office, and that person may indeed be the choice of the other commissioners. It seems sensible to the court, therefore, to delay the commissioners' vote for the selection of mayor until after the election of the fifth commissioner. It is not necessary for the court to restrain the commissioners from voting for that position, notwithstanding the provision of the statute, since they have indicated through counsel that they will voluntarily delay that vote.