STATE, EX REL. W. B. EASTHAM ET AL., RELATORS, V. GEORGE W. DEWEY, COUNTY CLERK, RESPONDENT.

FILED NOVEMBER 2, 1904. No. 14,000.

ORIGINAL application for a writ of mandamus to compel respondent to place names of candidates on ballot. *Writ allowed.*

*H. M. Sullivan, A. S. Tibbets* and *T. J. Doyle,* for relators.

*E. J. Clements* and *H. M. Sinclair, contra.*

By the Court: Ordered that the demurrer to the petition for a peremptory writ of mandamus be overruled and that a writ issue as prayed for by the relators. Opinion to be filed hereafter.

BARNES, J., dissenting.

The following opinion was filed March 23, 1905:

1. **Elections:** NOMINATIONS: FILLING VACANCIES. The statute (Comp. St. 1903, sec. 136, ch. 26) provides that a candidate for public office may decline the nomination of a political convention "at least twelve (12) days before the day of election," and that a nomination to fill the vacancy so occasioned must be filed eight days before the election. The purpose is to allow four days for the proper authorities to make the second nomination. If all parties interested agree to the change of candidates, and the declination of the first nominee and the nomination of his successor are both filed eight days before the election, it is a compliance with the statute, and the name of the second nominee should be placed upon the ballots.

State v. Dewey.

2. **Computing Time.** In the absence of a special provision in the election laws the general statute applies, and the eight days' time should be computed by excluding the day of filing the certificate of nomination and including the day of election.

SEDGWICK, J.

A candidate for the office of state senator, and two candidates for the office of representative of the respective senatorial and representative districts of which Custer county is a part, and a candidate for the office of county attorney for that county, all of whom had been regularly nominated as candidates for the election of 1904, filed with the respondent as county clerk of that county their declinations of the respective nominations pursuant to section 136, chapter 26, Compiled Statutes, 1903 (Ann. St. 5774). The proper committees which had been duly authorized for that purpose appointed other candidates for the respective offices, and filed with the county clerk the certificates of such appointments in due form as required by the statute. The county clerk refused to place the names of these appointees upon the official ballots, and declared his intention to place upon the ballot the names of the parties originally nominated, disregarding their declinations. This application was then made to this court for a writ of mandamus to compel the county clerk to regard the said declinations filed with him, and to place the names of the appointed candidates upon the ballot. The matter was ably presented in oral arguments and upon consideration the writ was allowed, but owing to the urgency of the case no written opinion was filed at the time. It is thought that the case is of such importance as to call for a brief statement of the reasons that led the court to the conclusion reached.

1. The section of the statute above cited provides that when any person nominated for public office as these candidates were "shall at least twelve (12) days before the election, * * * notify the officer with whom the original certificate of his nomination was filed, in writing,

signed by him, and duly acknowledged, that he declines such nomination, the same shall be void, and his name shall not be printed upon the ballots." The election was on the 8th day of November, and these declinations were filed with the county clerk, some of them on the 28th day of October and some still later, so that they were not filed twelve days before the election. It was for this reason that the clerk refused to regard the declinations, and supposed it to be his duty to place these names upon the official ballot.

The statute of Pennsylvania provides that such declinations may be filed fifteen days previous to the day of election. A decision of one of the district courts of that state was read upon the argument as justifying the position of the respondent. *Commonwealth v. Martin*, 7 Pa. Dist. R. 666. In that case the office in question was that of state senator, and the statute required that the declination be filed with the secretary of state. It was required that the secretary of state transmit to the commissioners of the county an official list of the candidates "fourteen days at least previous to the day of any election." The declination was filed on the 2d of November, six days before the election. The secretary refused to recognize the declination, and the court, by Judge McPherson, sustained him in so doing. The syllabus of the decision is: "The secretary of the commonwealth must refuse to recognize a withdrawal by a nominee when such withdrawal is not presented within the time fixed by statute." The opinion states two reasons for the limitation fixed by their statute which requires declinations to be made fifteen days before the election. One is that the secretary of state must transmit the official list of candidates to the commissioners of each county at least fourteen days before election. This reason has no force under our statute, since the original certificates of nomination are filed directly with the county clerk and the declinations are also filed with him. The second reason suggested by the court for the limitations of the statute is the plain intention of the statute to allow a

reasonable period for filling the vacancy. In that case the vacancy had not been filled, and to allow the declination would create a vacancy upon the ballot, unless it should be filled by another nomination after the declination had been allowed. Their statute prescribes no time within which another nomination might be made, except that it must be done before the election. The court said:

"If a candidate desires to withdraw, he must declare his intention within the time fixed by the act, in order that his party or the body of citizens that named him may have an opportunity to supply his place. This secures fair play; for if withdrawals could be made at any time, either before the ballots were printed, or before the day of election, it is manifest that a serious temptation to fraud and trickery would be presented. A withdrawing candidate could disfranchise his party by judiciously timing the date of his disappearance, and we need not suggest the dangers that lie hid in such a possibility."

If their statute had been more explicit, as ours is, and had provided that nominations to fill the vacancy upon the ticket must be made a stated number of days before the election, and if such nominations had actually been made in due time the reasoning of the court would have been wholly inapplicable. Our statute provides that a second nomination to fill a vacancy caused by a declination may be made at any time not later than eight days before the election. The law thus gives the proper authorities four days in which to fill the vacancy on the ticket. This gives "his party or the body of citizens that named him" four days' time in which "to supply his place." There can be no reason for requiring the declinations to be made more than eight days prior to the election, except for this purpose of giving an opportunity to supply the place and still have the final nominations filed with the county clerk eight days before the election. In the case at bar it seems that the declinations and the appointments to fill the places were both made upon agreement of all the parties interested, and that there was no necessity of the four days'

time in which to fill the vacancy. The declinations were made with the view of allowing the appointments to fill the vacancies to follow. It was thought that the law was complied with if the appointments to fill the vacancies were made the prescribed length of time before the election.

The statute of Kentucky provides that certificates of nomination shall be filed "not more than sixty and not less than fifteen days before the election." In *Hollon v. Center,* 102 Ky. 119, 43 S. W. 174, it was held that "the requirement of the statute that a certificate of nomination shall be filed not more than sixty days before the election is only directory." The court recognized the difficulty in stating a general rule by which to determine in all cases when a statute is intended as directory only, and quotes the following rule formulated by Judge Cooley:

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute." Cooley, Constitutional Limitations (7th ed.), 113.

The object of our statute is satisfied if the certificates of nominations to fill vacancies are filed eight days before the election and if the proper authortities are afforded four days, if necessary, after the original nominations have been declined, in which to fill the vacancies. The "rights of the parties interested were not prejudiced" by the failure to allow the nominating committees the full four days in which to make the substituted nominations. See authorities cited 15 Cyc. 338.

In *Napton v. Meek,* 8 Idaho, 625, 70 Pac. 945, the supreme court of Idaho followed the case of *Commonwealth v. Martin, supra.* The court, it appears, did not have access to the opinion in the Pennsylvania case, and did not

therefore consider the reasoning upon which the conclusion was reached. The Idaho court gave its own reasons as follows:

"One purpose for its enactment was to give the party that nominated him time to make another nomination, and have the name of such nominee printed on the official ballot, and to give the voter time to investigate the character and ability of the person who takes the place of the person so declining. *  *  * Where a law declares in unmistakable terms that a certain act must be done before the occurrence of a certain event or date, to hold that such act may be done at any time would totally abrogate its provisions by judicial construction. While it is the legitimate province of courts to interpret legislation, they are not authorized to supply omissions or inject matters which the legislature did not place therein. If the law under consideration is obnoxious, the remedy is with the legislature, and this court will not abrogate it by judicial legislation or decision. A law should not be repealed by judicial construction. The election laws of other states that require certificates of nomination to be filed within a certain time have uniformly been held to be mandatory, and all the reasoning in those cases is, we think, applicable to the law requiring declinations to be filed a certain number of days before election."

In Idaho there seems to be, as in Pennsylvania, no limitation upon the time for making appointments to fill vacancies caused by a declination of a nomination, except that the vacancy must be filled before the election takes place. In such case, as already pointed out, there is reason for a mandatory rule limiting the time for filing declinations; but if the legislature provides what shall be a reasonable time for making appointments to fill the vacancy, and prescribes that such appointments shall be considered in time if made eight days before the election, and if the declinations are in fact made in ample time to give the proper authorities sufficient opportunity to substitute other nominations, and the nominations are made a suffi-

cient time prior to the election to satisfy the statute in that regard, the reasoning of the Idaho court upon this point does not seem to apply.

2. It was strenuously contended that the appointments to fill the vacancies were not made the prescribed length of time before the election. It is undoubtedly true that the county clerk would have been justified in refusing to receive the declinations and place the names of the appointees upon the ballot, if the appointments to fill the vacancies were not made eight days before the election as the statute provides. In the statute of Pennsylvania there is a provision that, in counting the time of this limitation, the day upon which the declinations or nominations are filed shall be excluded and the day of election included in the calculation. In the absence of such a provision in our act it is to be presumed that the legislature intended that it should be governed by the general statute which provides: "The time within which an act is to be done as herein provided, shall be computed by excluding the first day and including the last." Code 895. This was said in *McGinn v. State*, 46 Neb. 427, "To establish a uniform rule, applicable alike to the construction of statutes and to matters of practice." These appointments were made on the 31st day of October, and by the above rule of computation were made eight days before the election.

WRIT ALLOWED.

BARNES, J., dissenting.

The writ was allowed in this case over my objections, and I cannot agree to the conclusions announced in the majority opinion.

1. My associates hold that the provision of our Australian ballot law, which says: "Whenever any person nominated for public office, as in this act provided, shall at least twelve (12) days before the day of election * * * notify the officer with whom the original certificate of his nomination was filed, in writing, signed by him, and duly

acknowledged, that he declines such nomination, the same shall be void, and his name shall not be printed upon the ballots," is merely directory.   To this I cannot give my assent.   The Australian ballot law is comparatively new, and is an innovation on our former election laws.   If this law is not mandatory it amounts to nothing.   It has been but recently adopted by many of the states, as well as our own, and but few cases—two only—construing the provision quoted have been decided by the courts of last resort.   These cases are referred to in the prevailing opinion, and an attempt has been made to distinguish them from the facts in the case at bar, and they will receive further consideration in this dissenting opinion.

The question first came before one of the district courts of the state of Pennsylvania.   The statute of that state reads as follows:   "Any person whose name has been presented as a candidate may cause his name to be withdrawn from nomination, by request in writing signed by him and acknowledged before an officer qualified to take acknowledgments of deeds, and filed in the office where his nomination certificate or paper is on file fifteen days, or in the case of township and borough elections twelve days, previous to the day of election; and no name so withdrawn shall be printed upon the ballots."   While the word "may" is used in the Pennsylvania statute (the word in our statute being "shall"), the Pennsylvania court held the statute of that state mandatory, and said that the secretary of the commonwealth must refuse to recognize a withdrawal of the nominee when such withdrawal is not presented within the time fixed by statute.   *Commonwealth v. Martin*, 7 Pa. Dist. R. 666.

The question next arose in the state of Idaho in the case of *Napton v. Meek*, 8 Idaho, 625, 70 Pac. 945.   Section 798 of the code of that state provides:   "Whenever any person nominated for public office, shall, at least thirty days before election, except in the case of municipal elections, in a writing signed by him, and certified to by the registrar of the precinct where the person nominated resides,

notify the officer with whom the certificate nominating him is required to be filed, that he declines such nomination, such nomination shall be void." It appears in that case that one Allen K. Wright was nominated for the office of representative by the regular democratic convention of Canyon county, in that state; that his name was duly certifid as by law required which was the case of the regular party nominee in this proceeding; and it was alleged that at a regularly called meeting of the Canyon county central committee of the democratic party held on the 3d day of October, 1902, Wright's declination was accepted, and Houston Napton was duly nominated by said committee to fill the vacancy resulting from said declination. Thereafter, on the 13th day of October, 1902, said declination, with the certificate of the registrar, was presented to the defendant, the auditor of said county, and he was requested to file the same, which he refused to do, on the ground that it was not presented for filing thirty days prior to the day of the election. On the foregoing facts the court held:

"The provisions of section 24 of an act approved February 2, 1899, commonly called the 'Australian Ballot Law,' prescribing that declinations of persons nominated for public office shall be filed with the proper officer at least thirty days before election, are mandatory, and a nominee desiring to take advantage of said provision must file his declination with the proper officer at least thirty days before the day of election."

The foregoing cases are the only ones in point, and the reasons given in each of them for holding the statutes mandatory cannot be successfully assailed. Indeed, my associates do not attempt to question their cogency, but after quoting only a part of them they say that, because our own statute further provides that nominations to fill the vacancy upon the ticket must be made and certified not less than eight days before the election, therefore we should disregard these well considered cases, and hold the section as to declinations directory only. The reason assigned for

this holding is that the statutes of Pennsylvania and Idaho do not specify the time when nominations to fill vacancies shall be made. To my mind the fact that our statute provides that certificates of nomination to fill vacancies shall be filed at least eight days before the election is an additional reason for holding both these provisions mandatory. It was evidently the intention of the legislature to specifically point out the procedure in such cases, in order to prevent fraud and preserve inviolable the rights of the voters. As was well said in *Napton v. Meek, supra:*

"We are not authorized to construe plain provisions of a statute like the one under consideration so as to defeat the evident intent of the legislature, or at all. Where a law declares in unmistakable terms that a certain act must be done before the occurrence of a certain event or date, to hold that such act may be done at any time would totally abrogate its provisions by judicial construction. While it is the legitimate province of courts to interpret legislation, they are not authorized to supply omissions or inject matters which the legislature did not place therein. If the law under consideration is obnoxious the remedy is with the legislature, and this court will not abrogate it by judicial legislation or decision. A law should not be repealed by judicial construction. The election laws of other states that require certificates of nomination to be filed within a certain time have uniformly been held to be mandatory, and all the reasoning in those cases is, we think, applicable to the law requiring declinations to be filed a certain number of days before election." *State v. Falley,* 9 N. Dak. 464; *State v. Piper,* 50 Neb. 40; *Hollon v. Center,* 102 Ky. 119; *In re Cuddeback,* 39 N. Y. Supp. 388; *Griffin v. Dingley,* 114 Cal. 481; *Phillips v. Curtis,* 4 Idaho, 193.

A clear distinction is made by courts in the construction of election statutes, in cases like that at bar, and of the law concerning election contest cases. The former are construed to be mandatory, the latter as directory. *Jones*

*v. State,* 153 Ind. 440; *Sackpole v. Hallahan,* 16 Mont. 40, 28 L. R. A. 502; *Baker v. Scott,* 4 Idaho, 596.

In *Jones v. State, supra,* it is held that "all provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory     *   *   * unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void."

To this reasoning, and the rule announced in the foregoing cases, I give my unqualified approval; and for these reasons, it seems to me that no vacancies on the ticket existed, or were created by the action of the regular nominees. There can be no vacancy unless one is created in the manner provided by law, and no nomination can be lawfully made by any one to fill a vacancy where none exists. It is stated in substance in the majority opinion as one of the reasons for allowing the writ that all of the parties interested agreed to and adopted the method described in the application. I do not find anything in the proceeding which indicates that the voters, who are the ones most vitally interested in the matter, and who in their regular conventions nominated the candidates of their choice, were ever consulted about the declination of their nominees, or the substitution of those named in the certificates in question; and there are no allegations in the application for the writ of any facts showing or tending to show that the relators were ever authorized to act for them in any manner whatever. Again, the majority opinion seems to establish the rule that the plain provisions of the statute may be disregarded and nullified by an agreement of the persons affected thereby. This doctrine seems to me to be not only unsound, but fraught with much danger.

2. It appears that the certificates of nominations presented by the relators purported to be nominations of a party created by the benevolent assimilation of two political entities; and such certificates were presented to re-

spondent on the 31st day of October, 1904; that the day of election in that year was November 8 following. On these facts the majority opinion holds that the statute providing for the filing of such certificates is mandatory, and that they must be filed at least eight days before the election. To this I give my approval. But it is further stated by that opinion that the certificates were filed in time. To this I cannot agree. By the usual rules of construction, in computing the time from the day of filing until the election, we are required to exclude the day of such filing. So November 1 is the first day which we can count in making this computation. This much seems to be conceded by my associates. Now counting to and including the 7th day of November, which is the last day before the election, we have but seven days. In order to escape from this dilemma, the rule provided by section 895 of the code is invoked, which reads as follows: "The time within which an act is to be done as herein provided, shall be computed by excluding the first day and including the last; if the last day be Sunday, it shall be excluded." It seems clear that this provision has no bearing on the question herein presented. The statute under consideration is special, and reads: "Such certificates shall be filed at least eight days before the election." This does not refer to the time *within* which an act shall be done. It is a specific declaration that the act shall be performed *before* a certain fixed time, or before the happening of a certain event. The plain language of the act excludes the day of election, because it says *before* the election. Now the election, election day, and the day of election, are synonymous terms, and to give these words their obvious meaning would exclude election day. The election embraces all of the business hours of the day on which it is held, and no part of that day can be included in the count to make the necessary eight days provided by the statute. Under such provision the day of the election should be excluded. *O'Connor v. Towns*, 1 Tex. 107; *Richardson v. Ford*, 14 Ill. 332. So I am of opinion that the certificates were not presented in

time, and for that reason, among others, the writ should have been denied.

3. Again, it was strenuously contended on the hearing by counsel for the respondent that the application was prematurely made; that the time allowed by law for him to act had not expired, and therefore the writ should have been denied. My associates have seen fit to ignore this question, but I cannot see my way clear to do so. The certificates in question were presented to the respondent on the 31st day of October, and the petition for the writ was filed on the day following. The cause was heard and the writ allowed on the 2d day of November, only two days after the certificates were presented to him. The statute gives three full days after the filing of the certificates for the filing of objections to the nominations. No duty was due from the respondent when this action was commenced, and he could not lawfully have placed the names of the candidates on the ballots until after the expiration of the three days above mentioned. This question was before the supreme court of Kansas in *State v. Carney*, 3 Kan. 88, which was a suit to compel action by the board of state canvassers. The court said:

"Is it possible that there can be an omission to perform the act before the arrival of the earliest day upon which the law authorizes it to be done? Certainly not; and no previous threat or determination not to do it can amount to an omission. The statute will bear no construction other than that the relator must, at the time of making the motion, show the defendant to be in default in the performance of his legal duty, and no threat or predetermination can amount to a default before the day upon which the act is to be done. In the case at bar the relator has shown that he demanded of the defendants the performance of the act he undertakes to enforce by the order of the court, and an express determination on their part not to perform it; but this does not and cannot amount to an omission to perform the act. * * * The showing made by the relator might convince the court that the defendants

will omit to perform the duty; but until they have omitted to perform it, the statute does not authorize the court to interfere, no matter how disastrous may be the consequences to the relator.  *  *  *  The court has taken some pains to find a case in which the writ was allowed before the time at which the law required the act to be performed had elapsed; and although the examination has extended to all the books likely to throw light upon the subject within our reach, no such case has been found, nor has one such been cited by counsel.  On the contrary we have found an unbroken current the other way."

When this application was made there had been no default of duty on the part of the respondent, and the writ should have been refused.

For the foregoing reasons, I am of opinion that the petition should have been dismissed and the writ denied.