CHARLES P. KILMURRAY AND JOHN J. KIJEWSKI,
PLAINTIFFS-APPELLANTS, v. WILLIAM H. GILFERT,
COUNTY CLERK OF HUDSON COUNTY, WILLIAM
MAC PHAIL, SUPERINTENDENT OF ELECTIONS OF
HUDSON COUNTY AND WILLIAM L. JOHNSTON AND
HUDSON COUNTY DEMOCRATIC COUNTY COMMITTEE,
DEFENDANTS-RESPONDENTS.

Argued October 20, 1952—Decided October 20, 1952—
Opinion Filed October 23, 1952.

436

437

*Mr. Morris Chesler* argued the cause for the appellants.

*Mr. Frederick J. Gassert,* County Attorney, argued the cause for the respondent William H. Gilfert (*Mr. Daniel T. O'Regan,* County Counsel).

*Mr. John B. Graf* argued the cause for the respondents Hudson County Democratic Committee and William L.

438

Johnston (*Mr. Robert H. Doherty* and *Mr. Charles M. Egan*, attorneys for William L. Johnston).

The opinion of the court was delivered by

VANDERBILT, C. J. James F. Murray, Sr. was nominated as the candidate of the Democratic Party in Hudson County for the office of register of deeds and mortgages at the primary election on April 15, 1952. He died on Monday, September 29, 1952. The next day the Hudson County Democratic Committee selected William L. Johnston as the candidate of the Democratic Party to fill the vacancy and filed a statement of its selection with the county clerk.

On October 1, 1952, the plaintiff Kilmurray, the Republican nominee for the office, and the plaintiff Kijewski, an independent candidate therefor, instituted a proceeding in lieu of prerogative writ to review the action of the county clerk in accepting the statement certifying the name of Johnston, and to restrain the county clerk and the county superintendent of elections from taking any steps to present the name of Johnston to the electorate. Both plaintiffs and defendants moved for summary judgment as a matter of law, and on October 7 judgment was entered in favor of the defendants. Appeal was promptly taken to the Appellate Division of the Superior Court, which on October 15 affirmed the judgment below, one judge dissenting, whereupon this appeal was taken as of right on October 16. Because of the public importance and urgency of the matter we set it down specially for argument on October 20.

The primary issue before us on this appeal is the interpretation of *R. S.* 19:13–20 and its application to the facts of the case, and at the oral argument counsel confined themselves to this point. *R. S.* 19:13–20 provides:

"In the event of a vacancy, howsoever caused, among candidates nominated at primaries, which vacancy shall occur not later than thirty-seven days before the general election, * * * a candidate shall be selected in the following manner: * * * in case of an office to be filled by the voters of an entire county * * * the candidate shall be selected by the county committee of such political

party within the county.  *  *  *  The selection shall be made no later than thirty-four days prior to the general election and a statement of the selection shall be filed as follows:  *  *  *  the county committee or subdivision thereof with the county clerk. Such statement shall not be filed later than thirty-four days prior to the general election.  *  *  *"

■ It is manifest that the vacancy occasioned by Murray's death did not occur "not later than thirty-seven days before the general election." Only 35 full days intervened between his death on September 29 and the general election set for November 4, but in the law the traditional method of computing time, in the absence of a clear direction otherwise, is to include the first fractional day and to exclude the last fractional day. *Barron v. Green,* 13 *N. J. Super.* 483 (*Law Div.* 1951), and cases therein cited at 486 *et seq.* Thus, in legal contemplation and within the meaning of *R. S.* 19:13–20, Murray died 36 days before the general election.

Since the vacancy occurred later than 37 days before the general election, the plaintiffs contend that under the statute the county committee had no jurisdiction to select a new candidate, that its action in so doing was a nullity, and that the acceptance for filing by the county clerk of its statement of selection was illegal. We do not so interpret *R. S.* 19:13–20.

■ The statutory scheme for filling vacancies among nominees for election to a county office at a general election is outlined in *R. S.* 19:13–19 and *R. S.* 19:13–20. If a vacancy occurs among candidates nominated by direct petition, *R. S.* 19:13–19 provides that his successor shall likewise be nominated by direct petition and that the petition of nomination must be filed with the county clerk not later than 34 days before the day of election. If a vacancy occurs among candidates nominated at a primary election, *R. S.* 19:13–20 provides that his successor shall be selected by the county committee of the party in whose slate the vacancy occurs and that the statement of its selection be filed with the county clerk not later than 34 days before the election. The

obvious intent of the Legislature in thus requiring that all vacancies be filled 34 days before the general election is to afford the various election officials sufficient time in which to attend to the mechanics of preparing for the general election. In the instant case the statement of Johnston's selection was filed with the county clerk 35 days prior to the election, so there can be no doubt but that this requirement of the statute has been met.

In addition to this 34 day requirement *R. S.* 19:13-20 contains the provision that the county committee shall fill a vacancy which occurs not later than 37 days prior to the general election. This three day interval patently is for the purpose of providing the county committee time within which to make its selection, not for the purpose of restricting the ability of the county committee to fill a vacancy which might occur thereafter providing, of course, that it does so not later than 34 days prior to the general election. If the county committee does not have the full three days or more in which to make its selection and file its statement, it alone is prejudiced. So long as the county committee files the statement of its selection within time, neither the election officials nor the electorate, nor opposing candidates, have any just grounds for complaint. To hold that the county committee had no power to fill a vacancy unless it occurred 37 or more days before the general election would be to destroy the statutory scheme by treating more favorably the filling of a vacancy among candidates nominated by direct petition rather than by a party primary election. There is no reason why such a distinction should be made and accordingly we are not to presume in interpreting the statute that the Legislature intended it to exist.

Election laws are to be liberally construed so as to effectuate their purpose, *Carson v. Scully,* 89 *N. J. L.* 458, 465 *(Sup. Ct.* 1916), *affirmed,* 90 *N. J. L.* 295 *(E. & A.* 1917). They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons, *In re Sloebling,* 16 *N. J. Misc.* 34 *(Cir.*

*Ct.* 1938) ; *Sharrock v. Keansburg*, 15 *N. J. Super.* 11 (*App. Div.* 1951). It is plain that if an attempt were made to challenge the validity of the election of a candidate on the grounds here advanced it would be unsuccessful and we perceive no reason why the name of a candidate should not be permitted on the ballot when, if subsequently elected, his election would be valid. It is in the public interest and the general intent of the election laws to preserve the two-party system and to submit to the electorate a ballot bearing the names of candidates of both major political parties as well as of all other qualifying parties and groups. It would be contrary to that interest and intent effectively, even if not theoretically, to deny the right of one of the major political parties to place a candidate's name before the electorate merely because its original candidate died 36 rather than 37 days prior to the election, where as here it has made and filed its selection of a substitute within the time prescribed by statute.

An interpretation of *R. S.* 19:13–20 so as to permit a county committee to fill a vacancy even though it did not occur more than 37 days prior to the election is both in the public interest and consistent with the statutory scheme. Such an interpretation, moreover, is supported by the decision in *State ex rel. Eastham v. Dewey*, 73 *Neb.* 396, 102 *N. W.* 1015, 1016 (*Neb. Sup. Ct.* 1905), where the factual situation was substantially analogous to that before us here. In that case the Nebraska Supreme Court stated:

"* * * The object of our statute is satisfied if the certificates of nominations to fill vacancies are filed eight days before the election, and if the proper authorities are afforded four days, if necessary, after the original nominations have been declined, in which to fill the vacancies. The 'rights of the parties interested were not prejudiced' by the failure to allow the nominating committees the full four days in which to make the substituted nominations."

In our opinion, therefore, by virtue of *R. S.* 19:13–20 the county committee had the power to fill the vacancy caused by the death of Murray 36 days before the general

election, the 37 day provision in the statute being directory only and not a limitation on the authority of the county committee to fill a vacancy so long as it makes and files its selection with the county clerk 34 days or more before the general election.

Our determination of this appeal being dispositive of the cause, judgment in favor of the defendants shall be entered forthwith pursuant to *Rule* 1:4-9(*b*).

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.