289 N.J. Super. 225 (1996)
673 A.2d 804
GEORGE SAUNDERS, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
TOMS RIVER REGIONAL SCHOOLS BOARD OF EDUCATION, DEFENDANT-RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 1996.
Decided March 27, 1996.
*228 Before Judges ARNOLD M. STEIN, KESTIN and CUFF.
Reilly & Archer, attorneys for appellant/cross-respondent (John P. Reilly on the brief).
Gilmore & Monahan, attorneys for respondent/cross-appellant (Thomas E. Monahan on the brief).
The opinion of the court was delivered by CUFF, J.A.D.
This appeal and cross-appeal requires us to determine the application and interpretation of a newly-enacted statute governing school elections. As an election action, we have accelerated the disposition of this matter. R. 1:2-5(1); 2:11-1(a).
Plaintiff George Saunders appeals from an order dismissing his complaint which challenged the action of defendant Toms River Regional Schools Board of Education striking the nominating petition of Angela Davis. In its cross-appeal, defendant asserts that this dispute is properly before the Commissioner of Education.
On February 26, 1996, the fiftieth day before the April 16 school board elections and the last day for filing of petitions, a nominating petition with the minimum ten signatures endorsing Angela Davis as a candidate representing South Toms River on the defendant regional school board was filed with defendant. On February 28, 1996, the Board Secretary sent a letter to Ms. Davis which informed her that her name would not appear on the ballot because one of the signers to the nominating petition was not a registered voter. On March 4, Susan Johnson, the previously unregistered voter, registered to vote.
This matter was commenced by way of an order to show cause on March 7, 1996 in the Law Division of the Superior Court. *229 Plaintiff,[1] another signer of the Davis nominating petition, argues that the recently enacted statute which substantially amends the law governing the conduct of school board elections, L. 1995, c. 278, is the operative law. He further contends that defendant failed to comply with the procedures of section 7 of this statute in that the filed petition was in apparent conformity with the requirements of the statute, and defendant has not acted on any written objection as required by law. By order dated March 20, 1996, Judge Frank Buczynski dismissed the Complaint. In his oral decision, the trial judge held that the dispute was governed by L. 1995, c. 278, § 7 rather than N.J.S.A. 18A:14-1 to 104; therefore, he rejected defendant's position that the Law Division lacked jurisdiction to hear the matter. In a separate oral decision, he held that the defect in the Davis nominating petition was substantive and not subject to cure up to the 44th day before the election. Therefore, he found that defendant properly invalidated the Davis nominating petition.
We affirm the March 20, 1996 order entered by Judge Buczynski substantially for the reasons set forth in his oral decisions of the same date. We add the following comments.
On December 15, 1995, L. 1995, c. 278 was approved. The general purpose of this bill is to increase voter participation and confidence in school elections by conforming the school election process to the general election process. To that end, the statutory provisions governing primary and general elections are applicable to school elections, except to the extent that the school elections require different treatment. L. 1995, c. 278, § 7. One of the consequences of this amendment is to transfer disputes arising *230 from the administration and application of this school election process from the Commissioner of Education to the Superior Court. Id.; see also Assembly State Government Committee, Statement to Assembly, No. 1705 (1994).
In order to resolve the jurisdictional issue, we must examine whether the legislation is to be applied prospectively or retroactively. The bill as originally enacted by the Legislature provided that it would be effective 180 days after enactment. See Assembly Bill No. 1705 (Second Reprint 1995). In her conditional veto message, Governor Whitman specifically noted that "[i]n order for the bill to apply to the 1996 school elections, I also recommend that the effective date of the legislation be changed to allow for application to the April 1996 school election." The Governor suggested that the bill be effective 90 days after enactment. Acting in apparent conformity with the Governor's message, the Legislature reenacted the bill, A-1705 (Third Reprint 1995), with the requested change. Thus the bill, signed on December 15, 1995 became effective on March 15, 1996.
Since the effective date of the bill fell in the midst of the 1996 school election process, defendant argues that the prior statute, N.J.S.A. 18A:14-1 to 104, must govern this election and this dispute concerning the Davis nominating petition must be referred to and resolved by the Commissioner of Education pursuant to the terms of N.J.S.A. 18A:6-9. Defendant concedes that, if the statute is applied retroactively, the Law Division of the Superior Court had jurisdiction of this matter. See L. 1995, c. 278, §§ 7 and 24.[2]
In ascertaining whether a statute should be applied prospectively or retroactively, we must determine the intent of the Legislature. State, Dep't of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 498, 468 A.2d 150 (1983). Generally, courts favor *231 prospective application of statutes. Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981). This rule is founded on the premise that fundamental fairness requires that citizens be given notice of a statute so that they may conform their behavior to the new or revised requirements. Id. at 522, 432 A.2d 80; 2 Norman J. Singer, Sutherland Statutory Construction § 41.02 (5th ed. 1992). Retroactive application promotes insecurity and may implicate due process rights. Ventron, supra, 94 N.J. at 498-99, 468 A.2d 150.
The rule favoring prospective application, however, is only a rule of statutory interpretation, which is utilized to discern legislative intent. When the Legislature expresses its intent, either explicitly or implicitly, that a statute is to be applied retroactively, the general rule must yield to the specific intent of the Legislature. Twiss v. State, Dept. of Treasury, 124 N.J. 461, 467, 591 A.2d 913 (1991); Strube v. Travelers Indem. Co. of Il., 277 N.J. Super. 236, 649 A.2d 624 (App.Div. 1994), aff'd o.b., 142 N.J. 570, 667 A.2d 188 (1995).
In this case, the legislative intent can be fairly gleaned to require retroactive application of the statute. See Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 383-84, 102 A.2d 587 (1954). The Governor specifically articulated a desire that the bill revising the school election process should be in place for the upcoming elections in April 1996. She made a specific recommendation concerning the effective date of the legislation and the Legislature followed that suggestion. Unfortunately, the Legislature did not act on the suggestions in the Governor's September 18, 1995 conditional veto message promptly, and the bill was not signed until December 15, 1995. Thus the effective date of the statute, March 15, 1996, fell within the time period between the filing deadline for the nominating petitions and the printing of the ballots.
We do not consider this factor fatal to a retroactive application of the statute. We cannot ignore the fact that the Legislature adopted the Governor's suggestion concerning the effective date of the legislation. This action strongly suggests the Legislature's *232 agreement that the bill should govern the April 1996 school elections. Furthermore, none of the parties have been caught unaware of the requirements of the new statute. Both parties acknowledge that the Commissioner of Education and the New Jersey School Boards Association have undertaken extensive efforts to advise school boards and candidates of the requirements under the new legislation. In that sense no one can argue that they were unprepared to meet the requirements of the new legislation. In fact, the Davis nominating petition was filed on February 26, the fiftieth day before the election, as required by L. 1995, c. 278, § 7, rather than on February 22, the fifty-fourth day before the election as would have been required by N.J.S.A. 18A:14-9. Notably, defendant did not reject the nominating petition on the ground that it was filed beyond the filing deadline. In this case, the record reflects that all interested parties have already conformed their conduct to the new requirements.
Having concluded that Judge Buczynski had jurisdiction to resolve this dispute, we must determine whether he correctly applied section 7 of the newly enacted legislation. Consistent with Lesniak v. Budzash, 133 N.J. 1, 626 A.2d 1073 (1993), he ruled that each signer of the nominating petition must be a registered voter. Further, he held that this is a substantive rather than a procedural requirement. Thus, if a petition is submitted on the final day for filing and it is determined that one or more of the signers is not a registered voter, the petition must fail, unless it has been signed by at least ten other qualified voters. In other words, a petition filed on the final day submitted with an inadequate number of legally qualified voters cannot be cured. In addition, Judge Buczynski held that defendant's examination of the petition upon submission to ascertain the qualifications of the signers of the Davis petition did not offend the statute.
L. 1995, c. 278, § 5a requires that each nominating petition for a school election candidate must contain a statement that the signers of the petition are qualified voters. Section 7 of the bill requires that each candidate for a school board election shall be *233 nominated by petition and the procedures for such nomination shall conform with the provisions of the general elections law, N.J.S.A. 19:13-1 to 23, unless those provisions are inconsistent with the specific requirements of the act. Among those differences are the necessary number of signers (10 rather than 2% of the entire vote cast in the last election for the General Assembly) and the date of filing (fiftieth day rather than the fifty-fourth day before the date of the school election). Section 7 also requires that
Whenever written objection to a petition of nomination hereunder shall have been made and timely filed with the secretary of the board of education, the board of education shall file its determination of the objection on or before the 44th day preceding the school election. The last day upon which a candidate may file with the Superior Court a verified complaint setting forth any invasion or threatened invasion of the candidate's rights under the candidate's petition of nomination shall be the 46th day before the election. The last day upon which a candidate whose petition of nomination or any affidavit thereto is defective may amend such petition or affidavit shall be the 44th day before the election.
In Lesniak, supra, the Supreme Court interpreted the language "qualified voter" to mean a registered voter rather than a citizen constitutionally eligible to vote. Lesniak, supra, 133 N.J. at 12, 626 A.2d 1073. Further, the signer's status as a registered voter must be determined as of the filing deadline for the petition, since it is the signer's status as a registered voter which empowers the signer to participate in the nomination process. Id. at 11, 626 A.2d 1073.
The substantive nature of the signer's status as a registered voter is reflected in the statutes governing the nomination process. N.J.S.A. 19:13-13 specifically allows amendment of defective petitions after the filing deadline. Significantly, however, signatures cannot be added. Thus, if a petition, such as the Davis petition, contains the minimum number of signatures as of the deadline for filing and one or more of the signers is determined to be an unregistered voter, the petition will fail because it does not contain the requisite number of signatures. As such, the opportunity to cure defects until the forty-fourth day before the election *234 does not aid plaintiff. Although the disqualified signer registered to vote on March 4,[3] she was still not a qualified voter at the critical time of the filing deadline.
Plaintiff argues, however, that the Davis petition was "in apparent conformity" upon submission, see N.J.S.A. 19:13-10, and defendant was required to accept it because no written objections were received to challenge the petition. Defendant concedes that the Board Secretary's February 28 letter was not a written objection as contemplated by section 7 of the new statute. Defendant argues, however, that the Board Secretary is not an automaton charged solely with the barest ministerial functions. At a minimum, the Board Secretary must be able to determine that the petition conforms with the basic statutory requirements, which includes a determination that each signer is a "qualified voter[] of the constituent district which the candidate shall represent...." L. 1995, c. 278, § 5a.
Judge Buczynski correctly accepted defendant's argument on this point. By statute, L. 1995, c. 278, § 5, each nominating petition shall be addressed and submitted to the secretary of the school board. That official has the inherent authority to verify that each petition conforms with the substantive and procedural requirements established by statute. An integral aspect of this function is a determination that each signer is a qualified voter of the relevant district.
We also agree that the determinative date for ascertaining whether a petition contains the requisite number of signatures is the filing deadline. Thus, if it is subsequently determined that a signer is not a qualified voter, that defect cannot be cured. In this case the disqualification of a signer left less than 10 signers and *235 the petition failed to satisfy the minimum statutory requirements. Accordingly, Judge Buczynski's March 20, 1996 Order dismissing plaintiff's complaint is affirmed.
ARNOLD M. STEIN, J.A.D., dissenting.
I would reverse and remand for entry of an order directing that the name of Angela Davis be printed on the official ballot as a candidate representing South Toms River in the school board election of April 16, 1996.
The nominating petition for Angela Davis was filed on February 26, 1996, the deadline date for filing the petition, fifty days before the scheduled election of April 16, 1996. N.J.S.A. 19:60-7. The petition contained the minimum ten signatures necessary to place her name on the ballot. Ibid. Susan Johnson, one of the signers of the petition, was not a registered voter at the time the petition was filed. See N.J.S.A. 19:60-5(a) (nominating petition must contain a statement that the signers of the petition are qualified voters of the constituent district). She lost her voting franchise in 1993, presumably because she did not vote in any election for four consecutive years, as then required by N.J.S.A. 19:31-5. That is no longer the law. "No registrant shall lose the right to vote ... solely on grounds of the person's failure to vote in one or more elections." N.J.S.A. 19:31-5, as amended, L. 1994, c. 182, § 4. Because Ms. Johnson's signature was not counted, that left the Davis petition with only nine signatures, one short of the minimum required by law.
Ms. Johnson reregistered to vote on March 4, 1996, "[t]he last day upon which a candidate whose petition of nomination or any affidavit thereto is defective may amend such petition...." N.J.S.A. 19:60-7. N.J.S.A. 19:13-13 provides: "A candidate whose petition of nomination ... is defective may cause such petition ... to be amended in matters of substance or of form as may be necessary, but not to add signatures ... and the same *236 when so amended shall be of the same effect as if originally filed in such amended form...." (Emphasis added.)
Ms. Johnson's reregistration as a voter was an amendment of the nominating petition "in substance or form" permitted by N.J.S.A. 19:13-13. It was not an additional signature on the ballot. It was a correction of a technical deficiency, a correction permitted by the statute.
"We have `traditionally given a liberal interpretation to' the election law." Lesniak v. Budzash, 133 N.J. 1, 7, 626 A.2d 1073 (1993) (quoting Catania v. Haberle, 123 N.J. 438, 448, 588 A.2d 374 (1990)); Kilmurray v. Gilfert, 10 N.J. 435, 440-41, 91 A.2d 865 (1952). "Election laws are to be liberally construed so as to effectuate their purpose. They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons." Kilmurray, supra, 10 N.J. at 440, 91 A.2d 865 (citations omitted); Petition of Kriso, 276 N.J. Super. 337, 341, 647 A.2d 1373 (App.Div. 1994).
Our election law contains provisions that are "reasonably necessary to prevent election fraud and to facilitate administration of the electoral process." Lesniak, supra, 133 N.J. at 7, 626 A.2d 1073 (quoting Note, Primary Elections: The Real Party in Interest, 27 Rutgers L.Rev. 298, 301 (1974)). Placing Angela Davis's name on the ballot will neither promote election fraud nor frustrate administration of the electoral process.
NOTES
[1] Defendant has not challenged plaintiff's standing. It appears that he has the requisite interest as a citizen to assure the fair application of the laws governing school board elections. New Jersey Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 67, 411 A.2d 168 (1980); Ridgewood Educ. Ass'n v. Ridgewood Bd. of Educ., 284 N.J. Super. 427, 431-32, 665 A.2d 776 (App.Div. 1995); see also Alongi v. Schatzman, 57 N.J. 564, 572-73, 274 A.2d 33 (1971).
[2] Section 24 specifically amends N.J.S.A. 18A:6-9 to provide that controversies and disputes concerning the conduct of school elections do not arise under the school laws.
[3] The forty-fourth day before the school election was March 3, which fell on a Sunday. If the signer's status was a procedural matter, we would consider her March 4 registration as satisfying the statutory deadline.