**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3621-24

CAMDEN COUNTY
DEMOCRATIC COMMITTEE,
INC. and JAMES BEACH,

     Plaintiffs-Respondents,

v.

SUSAN DRUCKENBROD, RENA
MARGULIS, and DAVID STAHL,

     Defendants-Appellants.

_____

Submitted March 18, 2026 – Decided April 17, 2026

Before Judges Mayer, Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2089-25.

Bromberg Law LLC, attorney for appellants (Yael Bromberg, on the briefs).

Brown & Connery, LLP, attorneys for respondents (William M. Tambussi, of counsel and on the brief; Michael J. Miles, on the brief).

Jennifer Davenport, Attorney General, attorney for amicus curiae Attorney General of the State of New Jersey (Sookie Bae-Park, Assistant Attorney General, of counsel; Christina Brandt-Young, Assistant Attorney General, of counsel and on the brief; Jennifer Lerman, Michelle Kostyack, and Nancy Trasande, Deputy Attorneys General, on the brief).

Jardim Meisner Salmon Sprague & Susser PC, attorneys for amicus curiae Good Government Coalition of New Jersey (Scott D. Salmon, of counsel and on the brief; Julia Burzynski, on the brief).

PER CURIAM

Defendants Susan Druckenbrod, David Stahl, and Rena Margulis appeal from a July 11, 2025 order enjoining them from conducting an organizational meeting of the Cherry Hill Democratic Committee (Cherry Hill Committee) and other post-election activities after their June 10, 2025 election as Cherry Hill Committee members. Defendants ran as the South Jersey Progressive Democrats (Progressive Democrats) to fill seventy-four seats for the Cherry Hill Committee.

Plaintiffs Camden County Democratic Committee, Inc. and its Chairman James Beach challenged the June 10, 2025 election results, arguing defendants won only three out of seventy-four seats on the Cherry Hill Committee. Therefore, plaintiffs claimed seventy-one seats remained vacant. Plaintiffs asserted the seventy-one vacant seats should be filled from the seventy-four

candidates who had run as a slate for the Camden County Democratic Committee (CCDC) in the June 2025 election. After entering an order to show cause (OTSC) and considering the parties' arguments, the judge enjoined defendants from taking any post-election organizational activities and directed the CCDC to fill seventy-one vacant seats from its slate of unsuccessful candidates. We reverse.

The Cherry Hill Committee consists of seventy-four members representing Cherry Hill's interests on the larger CCDC. The ballot design for the June 10, 2025 election for the Cherry Hill Committee was different from the ballot format used in prior elections.

The June 2025 ballot did not have an oval "to the left or to the right of the name of each candidate." N.J.S.A. 19:23-23.2(a)(1).[1] Instead of seventy-four ovals for each of the seventy-four candidates vying for office, the voters were given two options. The voters were instructed to "Vote for One" of two slates—the Progressive Democrats or the CCDC. The Progressive Democrats ran a slate of three individuals. The CCDC ran a slate of seventy-four people. In

---

[1] The ballot design was not challenged by the parties to this appeal. The issue was presented in the briefs submitted by amici. Generally, amici "cannot raise issues not raised by the parties." Chipola v. Flannery, 261 N.J. 460, 466 (2025) (quoting State v. O'Driscoll, 215 N.J. 461, 479 (2013)).

accordance with the ballot instructions, Cherry Hill voters selected between the two groups rather than seventy-four candidates individually.

The Cherry Hill voters elected the Progressive Democrats over the CCDC candidates by a vote of 5,547 to 3,350, or 62.3% of the votes cast. Because only three candidates were listed for the Progressive Democrats, seventy-one seats remained vacant.

Defendants, as the duly elected members to the Cherry Hill Committee, sought to fill the vacant seventy-one seats under N.J.S.A. 19:5-2. Defendants circulated an interest form to solicit residents of Cherry Hill who might be interested in filling those vacancies. About eighty Cherry Hill residents responded.

Two weeks after the election, plaintiffs filed a verified complaint and an OTSC to prevent defendants from acting as the Cherry Hill Committee by filling vacancies, adopting bylaws, and holding a post-election organizational meeting. Defendants filed a brief in response to the OTSC. The judge granted a motion by the New Jersey Attorney General to appear as amicus curiae and file a brief in support of defendants' position.

On the return date of the OTSC, the judge entered the July 11, 2025 order granting plaintiffs' motion for injunctive relief. In the order, the judge enjoined

A-3621-24

defendants "from conducting an organizational meeting of the Cherry Hill . . . Committee, adopting bylaws for the Cherry Hill . . . Committee, or attempting to fill the [seventy-one] open seats on the Cherry Hill . . . Committee." The order further allowed "the members of the CCDC residing in Cherry Hill" to "fill the [seventy-one] vacancies on the Cherry Hill . . . Committee from among the [seventy-four] candidates who have thus received the same number of votes at the primary in accordance with N.J.S.A. 19:13-20(c)."[2]

The issue before the trial court was whether N.J.S.A. 19:5-2 and -3 governed the results of a June 2025 county and municipal democratic committee election as defendants argued or, as plaintiffs argued, N.J.S.A. 19:13-20 governed.

Because this election was labeled a primary election, the judge found N.J.S.A. 19:13-20 applied. The judge determined N.J.S.A. 19:5-2 and -3 applied only in situations where "somebody is elected and dies, . . . leaves Cherry Hill, moves to Mongolia, whatever it is." Although the judge agreed the situation was "not a perfect fit" under the language of N.J.S.A. 19:13-20, he concluded that statute was "close enough." The judge found "what happened in Cherry Hill

---

[2] The judge entered an August 8, 2025 consent order staying the July 11 order pending the outcome of this appeal.

with this election . . . there's no precedent for it" and "[t]here's no case law in terms of how to deal with it. . . ."

The judge determined the June 10, 2025 election for Cherry Hill Committee resulted in a "tie."  The judge explained the "tie" was "unusual" because it involved seventy-four individuals; however, voters had only two election slates from which to choose.  The judge held defendants had finished in first, second, and third places "without the bracketing" per the ballot's design, which placed defendants in a three-way tie for first place.  He found all but three of the CCDC candidates "finished [four]th through [seventy-four]th."  The judge determined the "equitable result" meant three seats went to defendants and the remaining seats should be filled by the CCDC candidates.

The judge accepted that there was no statutory requirement to run a full ticket of seventy-four candidates for the Cherry Hill Committee election. However, he rejected defendants' argument that a quorum could be calculated from the three elected Progressive Democrats rather than a quorum based on the entire seventy-four-person membership.  The judge found defendants' argument "defeat[ed] the purpose of having a quorum requirement" because if only "one person gets elected," that person would have "a lifelong built-in quorum" and if

three people were elected, then "one person" would still "always . . . be a quorum."

On appeal, defendants contend the judge should have applied N.J.S.A. 19:5-2 and -3 rather than N.J.S.A. 19:13-20. Additionally, defendants assert the applicable statutes do not require a quorum of members to fill the seventy-one vacant seats on the Cherry Hill Committee. Defendants also argue the judge "retroactively chang[ed] elections laws" after the election, resulting in "election subversion."

In support of defendants' position, the Attorney General argues the judge erred "by disrupting the rules for filling vacancies after the election," thereby "thwarting the expressed will of the voters." The Attorney General further asserts the law "requires these vacancies to be filled by the three duly elected Committee members." The Good Government Coalition of New Jersey[3] echoes the Attorney General's arguments in support of defendants' appeal.

This case presents a question of law involving principles of statutory interpretation. We review matters involving statutory interpretation de novo. Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019) (citing State v. Fuqua,

---

[3] In a November 12, 2025 order, we granted a motion by the Good Government Coalition of New Jersey to participate as amicus curiae on behalf of defendants.

234 N.J. 583, 591 (2018)). A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Our de novo review of a judge's analysis of a statute does not accord deference to "mistaken" "interpretive conclusions of statutes." Scaduto v. Dep't of Env't Prot., 474 N.J. Super. 427, 435 (App. Div. 2023) (citing Nicholas v. Mynster, 213 N.J. 463, 478 (2013)).

"Principles of statutory construction require 'that a statute must be interpreted in light of its common law antecedents.'" In re Commitment of B.L., 346 N.J. Super. 285, 301-02 (App. Div. 2002) (quoting Johnson Mach. Co. v. Manville Sales Corp., 248 N.J. Super. 285, 306 (App. Div. 1991)). "[A] legislative body in this State is presumed to be familiar not only with the statutory law of the State, but also with the common law." Id. at 302 (quoting Magierowski v. Buckley, 39 N.J. Super. 534, 554 (App. Div. 1956)).

The courts are to "apply [a] statute as enacted." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980)). "It is not the function of th[e c]ourt to 'rewrite a plainly-written enactment,'" add language, or "engage in conjecture or surmise which will circumvent the plain meaning of the act." Ibid. (first quoting O'Connell v.

State, 171 N.J. 484, 488 (2002); and then quoting Jamesburg High Sch., 83 N.J. at 548). Courts interpret a statute's words according to "their 'generally accepted meaning.'" Kocanowski, 237 N.J. at 9 (quoting Spade v. Select Comfort Corp., 232 N.J. 504, 514-15 (2018)). "If the plain language of a statute is clear, our task is complete." Musker v. Suuchi, Inc., 260 N.J. 178, 186 (2025) (quoting Savage v. Twp. of Neptune, 257 N.J. 204, 215 (2024)).

"The Elections Clause of the United States Constitution grants the State with the right and ability to make laws concerning the time, place, and manner of elections." N.J.S.A. 19:23-23.1(a); accord U.S. Const. art. 1, § 4, cl. 1. When a case implicates "New Jersey election laws, [courts] are directed by principle and precedent to construe those laws so as to preserve the paramount right of the voters to exercise the franchise." N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 190 (2002). Consistent with that principle and case law, courts "construe statutes that govern elections liberally." Johnson v. Wilkerson, 262 N.J. 75, 81 (2025) (citing Kilmurray v. Gilfert, 10 N.J. 435, 440-41 (1952)). The term "liberal" in the context of elections is construed "to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly

to allow the voters a choice on Election Day." Ibid. (quoting Catania v. Haberle, 123 N.J. 438, 448 (1990)).

Here, as a matter of law, the judge was required to apply the proper statute reflecting the voters' choice for the filling of vacancies for municipal and county democratic committee members after the Camden County June 2025 election. N.J.S.A. 19:5-2, which governs vacancies on municipal committees, provides: "a vacancy in the office of a member of a municipal committee of any political party, howsoever caused, shall be filled for the unexpired term by the remaining members of the committee in the municipality in which the vacancy occurs." (Emphasis added). Consistent with its plain meaning, this statute applies when there is a vacancy "howsoever" the vacancy arises. Ibid.

N.J.S.A. 19:5-3 governs the filling of vacancies on county committees for political parties. The statute provides:

> A vacancy in the office of a member of the county committee of any political party, caused by death, resignation, failure to elect, or removal for cause, shall be filled for the unexpired term by the municipal committee of the municipality wherein the vacancy occurs, if there is such a committee[.]
>
> [N.J.S.A. 19:5-3 (emphasis added).]

Under N.J.S.A. 19:5-3, elected members of municipal party committees are responsible for filling vacancies on the county party committee within their

municipality.[4]   As N.J.S.A. 19:5-2 directs, the elected municipal party committee members are to fill a vacancy "howsoever" caused.  Under N.J.S.A. 19:5-3, one of the reasons for a vacancy is the voters' "failure to elect" someone to fill a seat.  The statute's "failure to elect" language has been unchanged by the Legislature for nearly a century despite the Legislature regularly amending the election statutes over the years.

There is no quorum requirement under N.J.S.A. 19:5-2 or -3 for the filling of political party committee vacancies.  Instead, case law provides a "majority of a public body constitutes a quorum."  N.J. Election L. Enf't Comm'n v. DiVincenzo, 445 N.J. Super. 187, 199 (App. Div. 2016) (quoting Matawan Reg'l Tchrs. Ass'n v. Matawan-Aberdeen Reg'l Sch. Dist. Bd. of Educ., 223 N.J. Super. 504, 507 (App. Div. 1988)).  "Under the common law quorum rule, any position left vacant, . . . is not counted to determine what the legal quorum is."  Id. at 200.  "The common law rule applies absent a 'pertinent statute to the contrary.'"  Ibid. (quoting King v. N.J. Racing Comm'n, 205 N.J. Super. 411, 415 (App. Div. 1985)).

---

[4]  In Camden County, the county committee consists of elected members of the municipal committees.

A-3621-24

The parties do not dispute there are seventy-one vacancies on the Cherry Hill Committee after the June 2025 election. Defendants, who were elected by the voters in Cherry Hill, can constitute a quorum. Consistent with settled case law, the existence of a quorum can be determined based on defendants, the three individuals who were elected by the voters in Cherry Hill to conduct themselves as the Cherry Hill Committee. A quorum of that duly elected committee is empowered to fill the vacant seats. There is no statute to the contrary.

Here, instead of applying N.J.S.A. 19:5-2 and -3, the judge found N.J.S.A. 19:13-20 governed the June 2025 election for the Cherry Hill Committee. However, N.J.S.A. 19:13-20 applies to vacancies and ties in a primary election where there is a subsequent general election. Specifically, N.J.S.A. 19:13-20 governs the filling of vacancies "howsoever caused, among candidates nominated at a primary election for the general election, which vacancy shall occur not later than the [seventieth] day before the general election, or in the event of an inability to select a candidate because of a tie vote at such primary." (Emphasis added).

A review of the case law evidences N.J.S.A. 19:13-20 applies only in those situations where a vacancy exists after the primary election and the vacancy must be filled before the general election. See Samson, 175 N.J. at 194

(stating there is "no question but that the Legislature enacted N.J.S.A. 19:13-20 'to afford the various election officials sufficient time in which to attend to the mechanics of preparing for the general election'") (quoting Kilmurray, 10 N.J. at 440). Plaintiffs cited no case law applying N.J.S.A. 19:13-20 to vacancies in elections for municipal and county committee members.

Having reviewed the statutes, we conclude N.J.S.A. 19:5-2 and -3 govern the filling of the seventy-one vacancies on the Cherry Hill Committee. The June 2025 ballot had only two ovals. One of the ovals reflected a slate of three candidates, representing the Progressive Democrats, and another oval reflected a slate of seventy-four candidates, representing the CCDC. The majority of voters selected the oval demarcating the Progressive Democrats to serve as elected members on the Cherry Hill Committee. The election result left a failure to elect candidates for the remaining seventy-one seats.

The seventy-one unfilled seats on the Cherry Hill Committee were vacant "howsoever caused" under N.J.S.A. 19:5-2. Specifically, the cause of the seventy-one vacancies was a "failure to elect" all seventy-four members to committee positions under N.J.S.A. 19:5-3. Defendants, as the individuals elected to serve on the Cherry Hill Committee, could constitute a quorum of the municipal committee. Therefore, under N.J.S.A. 19:5-2, the seventy-one

vacancies on the Cherry Hill Committee are to be filled by defendants as the elected members.

In this matter, there was only one election for municipal and county committee members. That election was held on June 10, 2025. Although labeled a "primary election," no subsequent general election for municipal and county committee members took place. Whoever won the June 10, 2025 election for committee persons did not advance to a general election. Because N.J.S.A. 19:13-20 applies to vacancies in the party nominations for public office to be filled at the general election, the judge misstepped by applying that statute to determine the filling of the seventy-one vacant seats for the Cherry Hill Committee.

Defendants won the June 10, 2025 election for the Cherry Hill Committee. In accordance with N.J.S.A. 19:5-2 and -3, defendants, in their capacity as duly elected members of the Cherry Hill Committee, are responsible for filling the seventy-one vacant seats based on a failure to elect. There is no statutorily imposed quorum requirement preventing defendants from serving as the Cherry Hill Committee because the quorum is determined based on the three individuals duly elected in the June 2025 election. Defendants are not required to fill the

A-3621-24

vacancies on the Cherry Hill Committee from the seventy-four unsuccessful candidates on the CCDC slate.

To the extent we have not addressed any remaining arguments, the arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Reversed and the matter is remanded to the trial court for entry of a judgment dismissing plaintiffs' complaint.  The trial court's stay order is dissolved.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

15