185 N.J. Super. 172 (1982)
447 A.2d 937
LIBERO D. MAROTTA, PLAINTIFF,
v.
JANE BURGIO, SECRETARY OF STATE OF THE STATE OF NEW JERSEY; JAMES F. QUINN, HUDSON COUNTY CLERK; JOSEPH T. BRADY, HUDSON COUNTY SUPERINTENDENT OF ELECTIONS; NICHOLAS J. LA ROCCA; DENNIS TETI; AND CARLOS E. MUNOZ, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided June 1, 1982.
*173 Libero D. Marotta, pro se.
Donna J. Kelly, Deputy Attorney General, for defendant Jane Burgio, Secretary of State of the State of New Jersey, and Joseph T. Brady, Hudson County Superintendent of Elections, (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Donna J. Kelly of counsel and on the brief).
Kathleen M. Grant, Assistant County Counsel, for defendant James F. Quinn, Hudson County Clerk (Francis P. Morley, County Counsel, attorney).
Harold Krieger for defendant Nicholas J. La Rocca (Krieger, Ferrara, Feinsilver, Flynn & Catalina, attorneys; Joseph J. Ferrara on the brief).
*174 BILDER, J.S.C.
This is a suit by a would-be candidate to obtain a place on the ballot in a special election to be held June 23, 1982 to fill a vacancy in the Senate seat for the 33rd Legislative District.
On May 17, 1982 the New Jersey Senate, finding the incumbent Senator no longer eligible to hold office by virtue of a criminal conviction, declared a vacancy and issued a writ of election calling for a special election on June 23, 1982 to fill that vacancy. N.J.S.A. 19:3-28; N.J.S.A. 19:27-4; N.J.S.A. 19:27-6.[1] Thereupon, nominations were made and filed by the various candidates involved in this litigation. Defendants La Rocca and Teti are respectively the candidates of the Democratic and Republican parties. They were nominated by their parties in accordance with N.J.S.A. 19:27-11 and filed with the Secretary of State on May 24, 1982. Plaintiff and defendant Munoz sought nomination by petition. Defendant Munoz filed with the Secretary of State on May 20; plaintiff unsuccessfully attempted *175 to file his petition on May 24 but the Secretary of State refused him on the ground that the filing date for independent candidates had expired on May 20. Plaintiff contends that either he had the same right as party candidates to file until May 24, 1982, or the statutory scheme is unconstitutional in its failure to grant independent candidates equal protection.

I
N.J.S.A. 19:27-11 in pertinent part reads as follows:
In the event of any vacancy in the Senate or General Assembly, each political party shall select a candidate for the office in question in the manner prescribed in R.S. 19:13-20 for selecting candidates to fill vacancies among candidates nominated at primary elections, and shall do so within 7 days of the issuance of the writ of election.
A statement of such selection shall be filed with the Secretary of State not later than 7 days after the issuance of the writ of election.
........
Beside the selection of candidates by each political party as before provided, candidates may also be nominated by petition in a similar manner as herein provided for direct nomination by petition for the general election; but the petition shall be filed with the county clerk or the Secretary of State, as the law may require, at least 34 days prior to such general election.
When the vacancy occurs in the Senate or General Assembly, the county clerk of each county which is comprised in whole or part in the Senate or Assembly District shall forthwith give notice thereof to the chairman of the county committee of each political party and in counties of the first class to the county board.
........
The county clerk shall print on the ballots for the territory affected, in the personal choice column, the title of office and leave a proper space under such title of office; and print the title of office and the names of such persons as have been duly nominated, in their proper columns.
Legislative history in New Jersey, in the absence of a study commission[2], is poor to nonexistent. Often it consists solely of the Statement attached to the bill, prior legislation, if any, *176 earlier versions of the law, if any, and the chronological history as contained in the Legislative Index.[3] In the instant case even this is sketchy. In his brief the Attorney General states:
The statement for S-3259 [the Senate Bill which when enacted became chapter 429 of the Laws of 1981] contains no discussion of the statutory filing requirements. According to the Office of Legislative Services, S-3259 was a substitute for an earlier Senate bill. The original bill proposed an amendment to the State Constitution whereby vacancies to legislative offices could be filled by interim appointments. That bill was withdrawn and S-3259 was written in accord with the existing provisions of the Constitution. It was reviewed by the Senate State Government Committee. The Committee files contain no information regarding the differing filing deadlines for party and independent candidates. The bill was not submitted to the Assembly State Government for its review; hence, there were no available Committee files to review.
This law resulted from an amendment of existing law. The enactment, in pertinent part, showing deleted portions by brackets and additions by italics reads as follows:
19:27-11. In the event of any vacancy [, howsoever occurring,] in the Senate or General Assembly [or in any county or municipal office, which vacancy shall occur after the last day for filing petitions for nominations for the primary election and prior to 37 days preceding the general election], each political party [may] shall select a candidate for the office in question in the manner prescribed in R.S. 19:13-20 for selecting candidates to fill vacancies among candidates nominated at primary elections, and shall do so within 7 days of the issuance of the writ of election.

A statement of such selection shall be filed with the Secretary of State [in the case of the candidates for the Senate and General Assembly, or the county clerk, in the case of candidates for county or municipal office,] not later than [the thirty-fourth day preceding the date of the general election] 7 days after the issuance of the writ of election.

........
Beside the selection of candidates by each political party as before provided, candidates may also be nominated by petition in a similar manner as herein provided for direct nomination by petition for the general election; but the petition shall be filed with the county clerk or the Secretary of State, as the law may require, at least 34 days prior to such general election.
When the vacancy occurs in the Senate or General Assembly, the county clerk of each county which is comprised in whole or part in the Senate or Assembly District shall forthwith give notice thereof to the chairman of the county *177 committee of each political party and in counties of the first class to the county board.
........
The county clerk shall print on the ballots for the territory affected, in the personal choice column, the title of office and leave a proper space under such title of office; and print the title of office and the names of such persons as have been duly nominated, in their proper columns.
[The provisions herein shall not apply to the selection of a candidate for the Senate or General Assembly unless a writ of election for filling the vacancy shall have issued as provided by this Title, prior to 34 days preceding the general election, and unless such writ shall designate the next general election day for the election.]
The Legislative Index shows that S-3259 as enacted was a committee substitute which was put on second reading December 14, 1981 immediately upon its release from committee, passed both houses in the following two sessions and was signed by the Governor five days later as chapter 429 of the Laws of 1981.

II
In the amendment to N.J.S.A. 19:27-11 the Legislature has given the political parties seven days from the issuance of the writ of election to file their selection of candidates with the Secretary of State. The Democratic and Republican parties have both done so on May 24, 1982 and there is no dispute that their filings were proper and within time. The issue here is as to filings by independents  what provision has been made and is it constitutional.
If one were to read the statute literally, giving the words their plain meaning (see Service Armament Co. v. Hyland, 70 N.J. 550, 556 (1976)), it might be concluded that no provision was made for independent candidates. That such a result would violate equal protection is so clear as to require no citation. Therefore it might be better concluded that independent petitions might be filed 34 days before the next general election. This interpretation, urged by plaintiff, would mean an October 1982 filing deadline for a June 23 election. A reductio ad absurdum. There can be no merit to any such literal approach.
*178 Let us therefore look to the internal sense of the statute  to its purpose  to gain a meaningful construction. See Loboda v. Clark Tp., 40 N.J. 424, 435 (1963). Intention comes from a general view of the whole expression rather than from the literal sense of the particular terms. Palkoski v. Garcia, 19 N.J. 175, 181 (1955). Viewed from this perspective, it can be fairly argued that the phrase "general election" was intended to mean the election in question  here the special election to fill the legislative vacancy. This would mean that independent petitions must be filed at least 34 days before the special election  or in this case by May 20. This is the interpretation upon which the Secretary of State acted in rejecting plaintiff's petition and is the construction urged by the Attorney General. Plaintiff contends that such an interpretation results in disparate treatment of party and independent candidates such as amounts to unequal protection of the law.
Differences in the nominating process as between party and independent nominees are not, in themselves bad. So long as the differences are reasonably taken in pursuit of vital state objectives that cannot be served equally well in significantly less burdensome ways, they are constitutionally valid. American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974). Thus, the use by N.J.S.A. 19:27-11 of different nominating processes is in itself valid. Can the same be said of the use of different filing periods?
The statute provides for an election to be held within a 37 to 43-day period. In all cases the parties have seven days within which to file. Independent candidates, however, have from three to nine days to file, depending upon the interval chosen in drafting the writ of election. The constitutional validity of this difference depends upon whether it is necessary to further a compelling state interest. Storer v. Brown, 415 U.S. 724, 729-733, 94 S.Ct. 1274, 1278-1281, 39 L.Ed.2d 714, 722-725 (1974). Here no such compelling state interest can exist. While the Secretary of State must be afforded a reasonable time to fulfill *179 her responsibilities in determining the validity of the petitions, there is no evidence the longer filing period  or the shorter pre-election period  presents any administrative problem. To the contrary, in the instant case, pursuant to court order, the Secretary of State received plaintiff's petitions without prejudice on May 26, 1982 for administrative action and the Attorney General's brief reports the petitions were found to be in order. Given the range of divergence from the seven days given political parties  i.e., from four days less to two days more, dependent solely on the discretion of the house issuing the writ of election, it cannot be said that the time limit fixed for independent candidates represents a finding of any compelling state need. The length of time given to gather signatures may place an unconstitutional burden on access to the ballot. See Storer v. Brown, supra, 415 U.S. at 738-740, 94 S.Ct. at 1283-1284, 39 L.Ed.2d at 728-729.
In Kilmurray v. Gilfert, 10 N.J. 435 (1952), Chief Justice Vanderbilt said: "Election laws are to be liberally construed so as to effectuate their purpose. They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons." Id. at 440; citations omitted. And in N.J. Sports & Expo. Auth. v. McCrane, 119 N.J. Super. 457, 476 (Law Div. 1971), aff'd 61 N.J. 1 (1972), app. dism. 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972), Judge (now Justice) Pashman said, in an oft-cited and approved statement: "The cardinal principle of statutory construction must be to save and not to destroy. The duty of the court is to strain if necessary to save the act, not to nullify it." Id. at 476.
N.J.S.A. 19:27-11 must be read in the light of the overall legislative pattern. It must be read in a commonsense way which accords with the legislative purpose. It must be read in a way which preserves the legislative goal  which permits the people to fill the vacant Senate seat and achieve their rightful legislative representation. The right of the electorate to a ballot bearing the names of independent candidates, as well as *180 those of both major political parties, is a matter of paramount public interest and is within the general intent of the election laws. See Kilmurray v. Gilfert, supra, 10 N.J. at 441.
In order to be constitutional, N.J.S.A. 19:27-11 must contain a provision that independent candidates can file their nomination petitions during the same period allowed to the party candidates for the filing of their statement of selection. Without this, there is an unconstitutional distinction made in this law. As noted, this becomes patent when one examines the varying results depending upon whether the writ of election calls for a 37- or 43-day period. When it calls for 37 days, as in the instant case, the independents get three days and the party candidates get seven days in which to file. If the writ of election were to call for a 43-day period, the independents would get nine days as opposed to the party's seven. It is clear from this that the Legislature made no finding of a rational basis for the distinction.
It is well established that where a statute is constitutionally deficient, the courts will read the constitutionally required provisions into the statute if that can be done without doing violence to the legislative purpose. Thus, for example, in the area of rent control, it has been held that a provision guaranteeing landlords a fair rate of return is deemed to be a part of every rent control ordinance, whether contained therein or not. See Hutton Pk. Gardens v. West Orange, 68 N.J. 543, 572 (1975). In the instant case the insertion of a provision that petitions of nominations of other candidates shall be filed in the Office of the Secretary of State in the same fashion within the same time limits as provided for the filing of the partys' statement of selection would save the statute's constitutionality.
In this case, the judicial insertion of this constitutionally required provision is permissible because it does not do violence to the legislative purpose. Indeed, an examination of the election laws generally shows a legislative pattern of equality of treatment to party candidates and independent candidates. See *181 N.J.S.A. 19:27-10.1 and the provisions of 19:27-11, apart from the amendment of chapter 429 of the Laws of 1981.
I conclude, therefore, that candidates nominated by petition have until seven days after the issuance of the writ of election to file with the Secretary of State. Plaintiff's petitions were therefore submitted for filing within time and shall be processed by the Secretary of State as though accepted when offered.
NOTES
[1] N.J.S.A. 19:3-28, as pertinent to this case, reads:

When a vacancy shall happen in the Senate or General Assembly of this State while such Senate or General Assembly is in session, the house in which such vacancy happens shall direct by a writ, issued at any session of the house within the 10 days following the occurrence of the vacancy but no later than the next session immediately following the 10-day period, that a special election be held for filling the same....
N.J.S.A. 19:27-4, as pertinent to this case, reads:
When any vacancy happens in the Senate or General Assembly, the house in which such vacancy happens shall direct by a writ, issued at any session of the house within the 10 days following the occurrence of the vacancy but no later than the next session immediately following the 10-day period, that a special election be held to fill the same....
N.J.S.A. 19:27-6, as pertinent to this case, reads:
In the case of a vacancy in the representation of this State in the Senate or General Assembly, the writ shall designate a special election day, the cause and purpose of the election and the name of the member in whose office the vacancy has occurred. The special election day shall be not less than 37 nor more than 43 days following the date on which the writ is issued. The writ also shall specify the day or days when the district boards shall meet for the purpose of making, revising or correcting the registers of voters to be used at the special election.
[2] See, e.g., The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission (1971), which relates to N.J.S.A. Title 2C; Report of the Attorney General's Task Force on Sovereign Immunity (1972), which relates to the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.
[3] The Legislative Index is a privately published periodical which lists every bill submitted before the Legislature with a short description and the cumulative chronological history of the bill.