**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2758-20

IN RE THE 2020 MUNICIPAL
GENERAL ELECTION FOR THE
OFFICE OF BOROUGH COUNCIL
FOR SOUTH TOMS RIVER,
COUNTY OF OCEAN, STATE
OF NEW JERSEY,

SANDFORD ROSS, JR.,

     Petitioner-Respondent,

v.

OCEAN COUNTY BOARD OF
ELECTIONS,

     Respondent-Appellant,

and

SUPERINTENDENT OF
ELECTIONS OF THE COUNTY
OF OCEAN, HON. SCOTT M.
COLABELLA, in his official
capacity as County Clerk of Ocean
County, JOSEPH KOSTECKI, in
his official capacity as Borough
Clerk of the South Toms River, and
GEORGE RUTZLER, in his

capacity as Candidates for Borough
Council for South Toms River,

Respondents-Respondents.
_____

Argued October 14, 2021 – Decided December 7, 2021

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Ocean County, Law Division, Docket No. L-2956-20.

Dominic L. Giova, Deputy Attorney General, argued the cause for appellant Ocean County Board of Elections (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel and on the briefs; Dominic Larue Giova, on the briefs).

Matthew C. Moench argued the cause for petitioner-respondent Sandford Ross, Jr. (King Moench Hirniak & Mehta, LLP, attorneys; Matthew C. Moench, of counsel and on the brief; Nakicha T. Joseph, on the brief).

The Wright Law Firm, attorneys for respondent George Rutzler, join in the brief of appellant Ocean County Board of Elections.

PER CURIAM

This appeal arises out of an election contest concerning the November 2020 election for two open seats on the South Toms River Borough Council. The Ocean County Board of Elections (the Board) appeals from portions of a May 4, 2021 order in which the trial court found that two of the candidates

2                                                              A-2758-20

received the same number of votes and ordered a special runoff election. The Board argues that the trial court misconstrued N.J.S.A. 19:16-4, which provides that ballots that are intentionally marked to identify or distinguish the ballots shall be declared null and void. We reject the Board's construction of the statute and affirm.

I.

The material facts are not in dispute and were established during a bench trial. Due to the COVID-19 pandemic, and in accordance with the Governor's Executive Order 177, the November 2020 general election was conducted primarily by mail-in ballots. Exec. Order No. 177 at ¶ 1 (Aug. 14, 2020), 52 N.J.R. 1701(b) (Sept. 21, 2020).

The mail-in ballots were sent to voters with instructions and came with a ballot, an inner envelope, and an outer return envelope. N.J.S.A. 19:63-12. Voters were instructed to complete the ballot and place it in the inner envelope. The inner envelope was then to be sealed and a certification attached to that envelope was to be filled out and signed. N.J.S.A. 19:63-16(a). The inner envelope was then to be placed in the outer return envelope, which was to be sealed and sent or delivered to the County Board of Elections. Id. at (d).

In the November 2020 general election, voters in South Toms River could vote on a number of contests, including two open seats for the Borough's council. Four candidates vied for the two open seats.

On the initial count, Edward Murray received 776 votes; Sandford Ross, Jr. received 772 votes; George Rutzler received 772 votes; and Jameal Calhoun received 766 votes. The Borough conducted a recount and rejected two ballots because those ballots had been signed by the voters. As a result, Murray received 774 votes; Ross received 770 votes; Rutzler received 772 votes; and Calhoun received 766 votes. Consequently, following the recount, Murray and Rutzler were declared the winners of the two open seats on the Borough Council.

Three of the candidates—Ross, Rutzler, and Calhoun—filed petitions contesting the election. Those petitions were consolidated and in April 2021, a two-day bench trial was conducted. Relevant to this appeal, the trial court heard testimony from F.D. and D.C., the two voters who had signed the face of their mail-in ballots. We use their initials to preserve the anonymity of their votes.

F.D., a man in his nineties, is a World War II veteran with impaired hearing. D.C. is a man in his eighties who assists F.D. in his daily activities. They have lived together since 2004. Both men testified they had not voted by mail before the November 2020 general election. Both also testified that they

A-2758-20

signed their ballots because they believed they needed to do so for the ballots to be counted.

The trial court found F.D. and D.C. to be credible. The court also found that neither voter had signed the ballot with the intent to identify or distinguish the ballot; instead, the court found that both had signed the ballot so the ballot would be counted. In connection with that finding, the trial court noted that neither F.D. nor D.C. had signed the ballots for any "nefarious" reason. Accordingly, the trial court reinstated F.D.'s and D.C.'s ballots. By reinstating those votes, the totals votes for each candidate were 776 for Murray; 772 for Ross; 772 for Rutzler; and 766 for Calhoun.

On May 4, 2021, the trial court entered an order providing, among other things, that Murray had won one of the council seats, Ross and Rutzler had tied for the other open seat, and a runoff election between Ross and Rutzler was to be held on June 29, 2021. The Board filed a notice of appeal and moved before the trial court for a stay of the special election pending the appeal. On June 15, 2021, the trial court granted the Board's application for a stay. Thereafter, we denied Ross' motion to vacate the stay and denied his motion to issue a summary determination on the merits of the Board's appeal.

A-2758-20

On appeal, the Board argues that the trial court erred when it reinstated the ballots of F.D. and D.C. because the ballots had been signed, rendering them null and void under N.J.S.A. 19:16-4. The Board frames the issue as a pure question of statutory interpretation: "Does N.J.S.A. 19:16-4, which mandates the nullification of any ballots marked with the intent to distinguish it, permit a good-faith exception?"

We disagree with the Board's framing of the issue and its interpretation of N.J.S.A. 19:16-4. We construe the statute to direct that ballots with markings or signatures are to be counted, "unless" the Board or a court finds the voter "intended" to mark or sign the ballot "to identify or distinguish" the ballot. Accordingly, we hold that the issue presented is a mixed question of law and fact. See State v. Harris, 181 N.J. 391, 416 (2004) (where an issue is a mixed question of fact and law, appellate courts defer to a trial court's factual findings but review de novo a trial court's application of the law to those findings).

The legal question involves the interpretation of the statutory provision N.J.S.A. 19:16-4. We review that question de novo. Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014). The factual question is what the two voters intended by signing their ballot. We review that question

under a more deferential standard: whether there was substantial credible evidence supporting the trial court's findings concerning the intent of F.D. and D.C. See Reilly v. Weiss, 406 N.J. Super. 71, 77 (App. Div. 2009) (factual findings made following bench trial are accorded deference when supported by substantial credible evidence).

1. A Procedural Issue.

Before addressing those legal and factual questions, we address a procedural issue. Ross, the only respondent to the Board's appeal, argues that the Board effectively waived its right to appeal. In support of that position, Ross points out that, before the trial court, the Board submitted a letter brief stating that it had "no interest in the ultimate outcome of an election contest." Ross then argues that the Board's statement, together with its limited participation in the trial, waived its right to appeal. We disagree.

Waiver requires "a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." State v. Mauti, 208 N.J. 519, 539 (2012) (quoting Mitchell v. Alfred Hofmann, Inc., 48 N.J. Super. 396, 405 (App. Div. 1958)). Nothing the Board did before the trial court constitutes a waiver. In its pretrial brief submitted to the trial court, the Board included a section addressing why it had nullified the two votes under N.J.S.A. 19:16-4. That

discussion was sufficient to preserve its right to participate and appeal from the trial court's determination.

Moreover, given the public's interest in elections and ensuring that all valid votes are counted, we deem the issue presented on this appeal to raise an important public question that warrants independent review even if the Board had waived its right to appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (allowing appellate courts to hear cases, even if the question is not properly preserved, if there is an issue of "great public interest").

2.    The Plain Meaning of N.J.S.A. 19:16-4.

N.J.S.A. 19:16-4 states in part:

> No ballot which shall have, either on its face or back, any mark, sign, erasure, designation or device whatsoever, other than is permitted by this Title, by which such ballot can be distinguished from another ballot, shall be declared null and void, unless the district board canvassing such ballots, or the county board, judge of the Superior Court or other judge or officer conducting the recount thereof, shall be satisfied that the placing of the mark, sign, erasure, designation or device upon the ballot was intended to identify or distinguish the ballot.

When interpreting a statute, the primary goal is to give effect to the intent of the Legislature. In re J.D-F., 248 N.J. 11, 20 (2021) (quoting In re Registrant N.B., 222 N.J. 87, 98 (2015)). "[T]he best indicator of that intent is the plain

8                                                          A-2758-20

language chosen by the Legislature." State v. Lenihan, 219 N.J. 251, 262 (2014) (alteration in original) (quoting State v. Gandhi, 201 N.J. 161, 176 (2010)). If a plain-language reading of a statute leads to a clear and unambiguous result, then a reviewing court's interpretive process is over. State v. Hupka, 203 N.J. 222, 232 (2010). If the statute is clear and admits of only one interpretation, a court does not need to look beyond the act's literal terms to divine the Legislature's intent. State v. Butler, 89 N.J. 220, 226 (1982).

N.J.S.A. 19:16-4 has a clear meaning. By its construction and language, it directs that marked ballots are to be counted "unless" a fact finder determines that the voter "intended" the mark "to identify or distinguish" the ballot. In other words, the presumption is that the ballot counts unless a determination of intent to identify or distinguish the ballot is made. See In re Keogh-Dwyer, 85 N.J. Super. 188, 193 (App. Div. 1964), rev'd on other grounds, 45 N.J. 117 (1965) (explaining that "[n]ot every mark on a ballot makes the [ballot] null and void").

The use of the word "intended" is consistent with that presumption and has a clear meaning in the statute. The plain meaning of "intend" is "to have in mind as a purpose or goal." Intend, Merriam-Webster, https://www.merriam-

webster.com/dictionary/intend (last visited Nov. 22, 2021).[1] As used in N.J.S.A. 19:16-4, "intended" directs the appropriate fact finder to determine if the voter placed the mark or signature on the ballot with the intent to identify or distinguish the ballot.

The Board argues for a bright-line rule. It contends that if a voter signed his or her ballot, then it is void. In that regard, the Board reasons that a voter must have meant to sign the ballot and, therefore, the ballot can be identified or distinguished by the voter's signature. A plain reading of the statute rebuts the Board's interpretation.

By requiring the Board or court to determine whether the voter intended the mark or signature to identify or distinguish the ballot, the Legislature clearly indicated that it was not a bright-line rule. The Legislature did not state, as it could have, that any ballot signed shall be nullified. Instead, it stated that ballots were to be counted even if marked or signed unless a fact finder is "satisfied that the placing of the mark [or signature] . . . was intended to identify or distinguish the ballot." N.J.S.A. 19:16-4.

---

[1] This definition of "intend" has been consistent from before and after the time when N.J.S.A 19:16-4 was amended in 1947 and 1953. See Webster's New International Dictionary 1291 (2d ed. 1943) (defining "intend" as "[t]o have in mind as a design or purpose").

In support of its argument, the Board cites to Bliss v. Wooley, 68 N.J.L. 51, 56-58 (Sup. Ct. 1902). Quoting from Bliss, the Board contends that the statute creates a "legislative fiat . . . to be enforced regardless of the supposed intention of the voter." Id. at 63. The statute interpreted in Bliss, however, was a different statute from N.J.S.A. 19:16-4. In 1902, the provision of the election law did not start with the presumption of counting a marked ballot, nor did it allow for a determination of the intent of the voter. Rather, the 1902 law stated:

> If on the face or back of any ballot or envelope inclosing ballot, there shall be any mark, sign, designation, or device whatsoever, other than is permitted by this act, whereby such ballot or envelope can or may be identified or distinguished from any other ballot or envelope used at such election, the ballot inclosed in such envelope shall be absolutely void and not counted for any candidate named thereon.
>
> [Bliss, 68 N.J.L. 51 (quoting decision of lower court).]

Our interpretation of N.J.S.A. 19:16-4 is also consistent with the well-established principle that election laws "are to be liberally construed so as to effectuate their purpose [and not to] deprive voters of their franchise or so as to render an election void for technical reasons." In re Application of Langbaum, 201 N.J. Super. 484, 489 (App. Div. 1985) (quoting Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952)). In Langbaum, we pointed out that "[v]oiding the ballot and thus disenfranchising the voter is too harsh a remedy where the deficiency

11

does not affect the integrity of the electoral process." Id. at 490. Consistent with that reasoning, we interpret N.J.S.A. 19:16-4 to require marked or signed ballots to be counted unless they were marked or signed with the intent to identify or distinguish the ballot.

3. The Intent of F.D. and D.C.

Using our construction of N.J.S.A. 19:16-4, we determine that there is substantial and credible evidence supporting the trial court's finding that F.D. and D.C. did not sign their ballots with the intent to identify or distinguish the ballots. The testimony by both F.D. and D.C. was clear: they signed their ballots so the ballots would be counted. While they apparently misunderstood the instructions, which directed that their signatures were to appear on the certification on the inner envelope, there was credible evidence supporting the trial court's finding that their signatures on the ballot itself were not intended to identify or distinguish the ballot.

In summary, we reject the Board's interpretation of N.J.S.A. 19:16-4. Instead, we interpret that statute to create a presumption in favor of counting the ballot unless a fact finder determines that the marking or signature on the ballot was intended to identify or distinguish the ballot. The trial court's findings concerning the intent of F.D. and D.C. are supported by credible evidence in the

12

record. We, therefore, affirm the trial court's finding that there was a tie between Ross and Rutzler for the second open seat on the Borough Council and a runoff election is required. We remand with the direction that the trial court establish a new date for the runoff election.

Affirmed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2758-20